# SUPREME COURT OF THE STATE OF NEW YORK

## COUNTY OF KINGS

-----------------------------------------------------------------------------------

KENNETH MOXEY

Plaintiff

v

MAAAS ENTERPRISES, LP

V- JAMA HOLDINGS, LLC

ROBERT L. PRYOR, BANKRUPTCY TRUSTEE

TUTHILL FINANCE LP, THE PRETENDER LENDER

MPJM CRUSH HOLDINGS, LLC

ALAN DREZIN, COURT APPOINTED RECEIVER OF RENTS and

DAVID A. BETRON, PROCESS SERVER

Defendants

**COMPLAINT**

INDEX No. **8698/13**

-----------------------------------------------------------------------------------

FOR DAMAGES UNDER CIVIL RIGHTS ACT (42 USC SECTIONS 1983-1986)

RICO (18 U.S.C. SECTIONS 1961-1965);

FRAUD; MISREPRESENTATION; PERJURY; CONSPIRACY; RACKETEERING;

VIOLATIONS OF RESPA 12 U.S.C. SECTION 2601 ET SEQ

VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW SECTION 349

VIOLATINS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT, 15 U.S.C. SECTION 1692

SLANDER OF TITLE/PETITION TO QUIET TITLE

## DEMAND FOR JURY TRIAL ON ALL JURY ISSUES

1

## JURISDICTION

This action arises under:

1. The Constitution of the United States, and specifically the First amendment (right to petition Government); Fifth Amendment (right to due process and equal protection of the law): Article IV, Section 1 (Privileges and immunity clause): Article IV Section 2 ( Constitutional right to unabridged interstate travel); and under:

2. Civil rights act, title 42 United States Code, Sections 1983-1986, that provides a Federal remedy to anyone suffering from violations of his Civil rights perpetrated under Color of State law.

3. Title 42 U.S.C. Section 1985, conspiracy to interfere with Civil rights, based upon the conspiracy by the defendants that repeatedly violated plaintiff's Civil rights.

4. Title 42 United States Code Section 1986, which provides for damages from those defendants who had knowledge of the violations of plaintiff's Civil rights, who had the duty and the ability to prevent or aid in the prevention of them, and who failed to perform that duty.

5. Title 18 United States Code Sections 1961-1964. The racketeering influenced and corrupt organizations act (hereinafter "RICO") claim arises from the pattern of multiple predicate acts perpetrated by the defendants over a 4 year span. The predicate acts of racketeering by multiple defendants affected interstate commerce.

6. The matters in controversy are the conspiracy to transfer ownership of the mortgage without notifying plaintiff, the serving of process upon plaintiff by the alleged process server David A. Betron which was notarized by his wife Francine Betron , and to further

2

transfer ownership of the mortgage before, and during the foreclosure process in order to

deny plaintiff of any surplus funds, foreclosing on the subject property when the chain of

title had been broken which converted the mortgage into an unsecured obligation, the

improper sale of the $900,000.00 property by the bankruptcy trustee for $44,000.00 to

two new entities who were never the holder and or owner of the mortgage and note in

violation of items # 4, 5, 6, 7, 9, 11, 12, 13, 14, and 15 of the stipulation and order of the

Bankruptcy Court, and the theft of rents collected during the time Alan Drezin was

appointed by the court as the receiver of rents from the three tenants of the property.

7.   The matters in controversy exceed two million dollars.

## VENUE

Venue is based upon the following;

8.   Venue is based upon the location of the subject property and the location where the

alleged wrongful acts occurred.

## PLAINTIFF

9.   KENNETH MOXEY is an individual and the former owner of the subject property who

resides at 923 Custer Street, Valley Stream (Nassau County), New York.

## DEFENDANTS

10. MAAAS ENTERPRISES, LP is one of the two purchasers, who purchased the subject property

for $44,000.00 and whose address is 8 Douglas Drive, Holmdel (Monmouth County) New

Jersey.

11. V-JAMA HOLDINGS, LLC is one of the two purchasers, who purchased the subject property

for $44,000.00 and whose address is 224 93rd Street, Brooklyn (Kings County) New York.

3

12. ROBERT PRYOR is the bankruptcy trustee appointed by the court and whose address is 675 Old Country Road, Westbury (Nassau County) New York.

13. TUTHILL FINANCE, LP is the pretender lender of the mortgage, whose address is 60 Katonah Drive, Suite 26, Fairfield (Fairfield County) Connecticut.

14. MPJM CRUSH HOLDINGS, LLC the foreclosing lender, whose address is 2152 59th Street, Brooklyn (Kings County) New York.

15. Alan Drezin is the court appointed receiver of rents, with offices located at 26, Court Street, Suite 810, Brooklyn (Kings County) New York.

16. DAVID BETRON is the process server who alleged served plaintiff with a summons and a complaint and whose address is 531 Redwood Drive, Cedarhurst (Nassau County) New York.

## PRELIMINARY STATEMENT

17. Plaintiff took a mortgage loan against his property on May 25, 2007, which is a storefront with two apartments located at 245 South 1st Street, Brooklyn, New York from Tuthill Finance, a pretender lender.

18. In February of 2009 Tuthill Finance commenced foreclosure proceedings, and filed a bogus return of service with the court, and failed to notify plaintiff.

19. Tuthill Finance further engaged in a conspiracy to form a new corporation, then transferred the mortgage loan to this new entity and induced the court to change the foreclosing parties from Tuthill Finance and Pliny Syndications to MPJM Crush Holdings.

20. Tuthill Finance also filed an order to show cause, asking the court to appoint a receiver of rents to collect the rent, but failed to serve plaintiff with the order to show cause.

4

21. Although all allegations must be accepted as true at this stage of the pleading, most of the allegations are proven in judicial records and plaintiff requests that judicial notice be taken of these records.

22. Further, during discovery, this evidence will be entered into these proceedings.

**PLAINTIFF SEEKS:**

23. David A. Betron to produce a copy of his license to be a process server, a copy of the summons he allegedly served, the return of service, the file regarding the service, including the GPS record which he is required to keep.

24. Deposition of the process server regarding the alleged serving of the summons and the complaint.

25. Referral of the process server to the Kings County district attorney for an investigation, arrest and prosecution for perjury, fraud upon the court and fraud upon plaintiff upon plaintiff for offering a false instrument for filing in violation of the New York Penal Law 170.10

26. Demand for the contract and cancelled checks and or wire for the sale of 50% of the subject's mortgage from Tuthill Finance to Pliny Syndications on or about November 2008.

27. Deposition of Jeffrey Wain, the President of Wainco Inc., who allegedly signed Tuthill Finance assignment of mortgage to Pliny Syndications.

28. Demand for the contract and cancelled checks and or wire for the sale of 50% of the subject's mortgage from Tuthill Finance to MPJM Crush Holdings on or about March 2010.

29. Deposition of Jeffrey Wain, the president of Wainco Inc., who allegedly signed Tuthill Finance assignment of mortgage to MPJM Crush Holdings.

30. Demand for the contract and cancelled checks and or wire for the sale of 50% of the subject's mortgage from Pliny Syndications to MPJM Crush Holdings.

31. Proof that Tuthill Finance served plaintiff with their order to show cause in regards to their attempt to petition the court to appoint a receiver of rents.

32. Deposition of Alan Drezin, the court appointed receiver of the rents regarding the rents he collected.

33. Deposition of the principals of MPJM Crush Holdings regarding the conspiracy to form the Corporation for the sole purpose of acquiring and foreclosing on the subject property.

34. Deposition of the three tenants of the subject property regarding how much rent they paid to the receiver of rents.

35. Copies of all bids, contracts and down payment checks submitted to the bankruptcy trustee which were required according to items # 4, 5, 6, 7, 9, 11, 12, 13, 14 and 15 of Judge Alan S. Trust's stipulation and order dated December 11, 2012.

36. Deposition of the bankruptcy trustee regarding the sale of the subject property to MAAAS Enterprises and V-JAMA Holdings because the transaction was not an arm's length transaction and the trustee sold the subject property for $44,000.00 and violated the order of the bankruptcy court and the property is worth $900,000.00 according to Zillow.com

37. Declaratory judgment to declare certain rights and legal obligation as stated in this action.

38. A demand, for this court to receive reports and evidence of criminal activities, that plaintiff has discovered, and can provide. Judges must receive these reports and evidence under the clear wording of the Federal Crime Reporting Statue, title 18 U.S.C. Section 4. Title 18 U.S.C. Section 4 (Misprision of felony). " Whoever, having knowledge of the actual

6

commission of a felony cognizable by a Court of the United States, conceals and does not as soon as possible make known the same to some Judge or other person in civil or military authority under the United States, shall be fined not more than three years or both".

39. Referral of any and or all crimes to the Kings County District attorney for investigation and prosecution of the alleged crimes.

40. Damages from all defendants named in this complaint.

41. Punitive damages of up to three times, for violations of NY GBL Section 349, fraud, conspiracy, Racketeering, fraud upon the court and fraud upon plaintiff.

42. A declaration that the court appointed receiver of rents Alan Drezin, was professionally negligent and engaged in a conspiracy to join an existing conspiracy and defrauded the State of New York and the United States of America, by converting the office of the receiver of rents into a corrupt criminal enterprise, as documented in this complaint.

43. A declaration that the office of the receiver of rents, met the requisite of a racketeering enterprise; See United States v. Stratton, 649 F. 2d 1066 (1981).

44. A declaration that the bankruptcy trustee Robert L. Pryor, was professionally negligent and engaged in a conspiracy to join an existing conspiracy and defrauded the State of New York and the United States of America, by converting the office of the bankruptcy trustee into a corrupt criminal enterprise, as documented in this complaint.

45. A declaration that the office of the bankruptcy trustee met the requisite of a racketeering enterprise; See United States v. Stratton, 649 F. 2d 1066 (1981).

46. Quiet title to the subject property because the mortgage was defective at inception, the mortgage was illegally split into two parts and or fractions which caused it to become an

unsecured obligation, the mortgage can never be glued back together, the real lien holder

is unknown and title to the subject property has been permanently clouded.

## CONSPIRACIES

47. The pretender lender Tuthill Finance, engaged in a conspiracy to divide the mortgage into

fractions and sell the mortgage in fractions before and during the foreclosure, then formed

MPJM Crush Holdings to transfer the mortgage and continue the foreclosure in order to

steal any surplus funds left over from the auction of the subject property.

48. Tuthill engaged in a conspiracy to collect rent from the subject property, by filing an order

to show cause and failing to serve plaintiff with the motion, in order to steal the rents.

49. The court appointed receiver of rents Alan Drezin, engaged in a conspiracy with his

handpicked appointee Douglas Rosenberg to steal the rents collected from the subject

property.

50. The bankruptcy trustee engaged in a conspiracy and violated the order of the bankruptcy

court when he sold the subject property which is worth some $900,000.00 in a non-arms

length transaction for $44,000.00 to two entities that had no interest as owners and or

holders of the mortgage.

## BRIEF HISTORY OF EAERLIER EVENTS

51. To help understand the events that preceded the attacks upon plaintiff; on May 25, 2007

plaintiff took a mortgage loan of $480,000.00 with the pretender lender Tuthill Finance, LP

and item # 16 states, "This mortgage may not be changed or terminated orally".

**Exhibit A.** Copy of the mortgage plaintiff took from Tuthill Finance, LP

52. On July 6, 2007 Tuthill Finance assigned the mortgage in whole to Sovereign Bank, as collateral assignment of mortgage and other documents as security for existing indebtness and future advances, thereby separating the note and the deed of trust/mortgage.

53. On November 14, 2007 Sovereign Bank assigned the mortgage without covenants to Tuthill Finance.

54. On November 25, 2008 Tuthill Finance partially assigned 50% of the mortgage to Pliny Syndications, thereby separating the note and the deed of trust/mortgage.

55. On December 11, 2008 Soverign Bank recorded a correction assignment of mortgage without covenants in the Secondary market for the purpose of releasing a security interest in the assigned collateral.

56. On or about February of 2009 Tuthill Finance and Pliny Syndications commenced foreclosure proceedings against the subject property.

57. The alleged process server David A. Betron, filed a bogus return of service with the clerk of the court on February 27, 2009 stating that he served plaintiff on February 18, 2009 and the return of service is questionable because it was notarized by his wife Francine Betron. **Exhibit B.** Bogus return of service filed with the clerk of the court.

58. Betron committed perjury, when he told the court that he served plaintiff and the presiding Judge said that Betron's testimony was credible.

59. Tuthill Finance also filed an order to show cause to appoint a receiver to collect the rents, failed to serve plaintiff with the order to show cause as required and got an order from the court to collect plaintiff's rent.

60. On March 5, 2010 the management of Tuthill Finance which is a Connecticut entity, formed a New York entity called MPJM Crush Holdings for the sole purpose of foreclosing on the subject property in the State of New York.

**Exhibit C.** Record from the New York State Department of State, which states that MPJM Crush Holdings LLC was formed on March 5, 2010.

61. Twelve days later on March 17, 2010 Tuthill Finance assigned their partial 50% share of the subject's mortgage to MPJM Crush Holdings, thereby separating the note and the deed of trust/mortgage.

62. Also on March 17, 2010 Pliny Syndications assigned their partial 50% share of the subject's mortgage to MPJM Crush Holdings, thereby separating the note and the deed of trust.

63. Plaintiff was never notified of the assignments pursuant to the Federal RESPA law.

64. On July 12, 2012 plaintiff filed for bankruptcy protection.

65. On June 18, 2012 MPJM Crush Holdings obtained a judgment of foreclosure and sale against the subject property for $957,040.00 and also submitted a false proof of claim to the bankruptcy court, stating that they are in fact the true party of interest.

66. On October 16, 2012 the bankruptcy was discharged.

67. On December 11, 2012 the presiding United States Bankruptcy Judge Alan S. Trust entered a stipulation and order aka Doc # 22 which states the following;

68. On page 3, item # 3 states, "The trustee acknowledges that MPJM holds a valid first note and mortgage against the Brooklyn property with a balance due as of the filing date on its judgment of foreclosure and sale entered on June 18, 2012 in the sum of $957,040.00".

69. On page 3, item # 4 states, "MPJM hereby offers as an initial stalking horse offer the sum of $600,000.00 (the offer) to purchase the estate's right, title and interest in and to: (a) the Brooklyn property and (b) the amounts held by the receiver for the rents collected by him for a total offer of $625,000.00".

70. On page 3, item # 5 states, "Contemporaneously with the execution of this stipulation, MPJM shall deliver the sum of $10,000.00 (the $10,000.00 initial deposit) made payable to Robert L. Pryor, trustee, which shall be held in escrow to be utilized toward the purchase price to the extent that MPJM is the highest and best offeror".

71. On page 4, item # 7 b states, "A total of $44,000.00, which represents; (i) agreed reduced trustee's commissions in the amount of sixteen ($16,000.00) thousand dollars, measured by one half (1/2) of amounts allowable pursuant to 11 U.S.C. Section 326 computed against MPJM's total offer received on account of the sale of the Brooklyn property and the rent; (ii) legal fees to Pryor and Mandelup, LLP., as counsel to the trustee, not to exceed $10,000.00 along with reimbursement of costs and disbursement; and (iii) $18,000.00 for the benefit of unsecured creditors".

72. On page 5, item # 12 states, "Closing of this sale shall be conducted at the offices of Pryor and Mandelup, LLP, 675 Old Country Road, Westbury, NY 11590 on a date which is no later than thirty (30) days after the entry of an order approving the sale and the highest bidder, time being of the essence as against the highest bidder".

73. On page 5, item # 13 states, "At closing, the trustee shall prepare and deliver to MPJM (or the highest bidder) a trustee's quitclaim deed conveying title to the Brooklyn property to MPJM (or the highest bidder".

74. On January 9, 2013 the Bankruptcy trustee Robert Pryor, signed a Quitclaim deed transferring the subject property to MAAAS Enterprises, LP and V- JAMA Holdings, LLC in consideration of $44,000.00 in clear violation of Judge Alan S. Trust's order.

75. The Trustee Robert Pryor's commission was $16,000.00 and the Trustee's lawyer, the law firm of Pryor and Mandelup, LLP received legal fees of $10,000.00

76. The trustee Robert Pryor had a conflict of interest because the trustee is the managing partner and co-founder of the Westbury Bankruptcy Law Firm of Pryor and Mandelup, LLP according to the long island bankruptcy blog posted on October 27, 2010 at 11.00 p.m. and written by Craig D. Robbins, Esq.

77. Alan Drezin, the receiver of rents filed an order to show cause on January 30, 2013 and item # 3 of his accompanying affidavit states, "During the period covered by the annexed final accounting, I received a total sum of $81,295.31 in income. Said sum is the only monies which have come into my hands as receiver for the period of August 20th, 2010 to and including January 29th, 2013".

78. However, plaintiff was collecting a total of $5122.00 per month from the three tenants and from August 20th, 2010 to January 29th, 2013 the receiver should have collected a total of $153,660.00 and plaintiff is alleging that Alan Drezin and his handpicked property manager Douglas Rosenberg of BPC Management stole the rent monies they collected and plaintiff intend to depose the three tenants to prove the fact of the matter asserted.

79. The assignment of the mortgage from Tuthill Finance to Pliny Syndications and MPJM Crush Holdings were non arms length transactions.

80. The sale of plaintiff's property by the bankruptcy trustee Richard Pryor to MAAAS Enterprise and V-JAMA Holdings was a non arms length transaction.

### CHAIN OF TITLE AND CHAIN OF NOTE

**81. RECORDED EVENTS ON THE LOAN, INCLUDING FORECLOSURE ISSUES, SECURITIZATION AND SEPARATION OF THE NOTE FROM THE MORTGAGE.**

**RECORDED CHAIN OF DEED POSSESSION**           **CHAIN OF NOTE POSSESION**

| DATE | Original Mortgage | Date | Note holder |
|---|---|---|---|
| Date: Recorded/Filed on 06/15/2007, City Register File No. (CRFN):2007000310727 | **Tuthill Finance** **60 Katonah drive, Suite 26, Fairfield, CT 06824** | May 25, 2007 | Tuthill Finance 60 Katonah Drive, Suite 26, Fairfield, CT 06824 |
| Date: Recorded/Filed on 08/07/2007, City Register File No. (CRFN):2007000405601 | **Sovereign Bank** **75 State Street, 4th Floor** **Boston, MA 02109** **(Collateral assignment as security for existing debt and future advances)** | July 6, 2007 | Tuthill Finance 60 Katonah, Drive, Suite 26, Fairfield, CT 06824 Unsecured obligation |
| Date: Recorded/Filed on 12/11/2007, City Register File No. | **Tuthill Finance** **60 Katonah Drive, Suite 26, Fairfield, CT 06824** | November 14, 2007 | Tuthill Finance 60 Katonah Drive, Suite 26, |

| | | | |
|---|---|---|---|
| (CFRN):2007000607328 | | | Fairfield, CT 06824 |
| Date: Recorded/Filed on 12/16/2008, City Register File No. (CRFN):2008000477243 | **Tuthill Finance** <br> **60 Katonah Drive, Suite 26,** <br> **Fairfield, CT 06824 (50% owner)** <br> **Pliny Syndications, LLC** <br> **One Thorndal Circle, 3rd Floor** <br> **Darien, CT 06820** <br> **(As to 50% ownership)** | November 25, 2008 | Tuthill Finance <br> 60 Katonah Drive, <br> Suite 26, <br> Fairfield, CT 06824 <br> Unsecured obligation |
| Date: Recorded/Filed on 01/13/2009, City Register File No. (CRFN):2009000009473 | **Tuthill Finance** <br> **60 Katonah Drive, Suite 26** <br> **Fairfield, CT 06824 (50% owner)** <br> **Pliny Syndications, LLC** <br> **One Thorndal Circle, 3rd Floor** <br> **Darien, CT 06820 (50% Owner)** | December 11, 2008 | Tuthill Finance <br> 60 Katonah Drive, <br> Suite 26, <br> Fairfield, CT 06824 <br> Unsecured obligation |
| Date: Recorded/Filed on 04/01/ 2010, City Register File No. (CRFN):2010000109954 | **Entity formed on March 5, 2010** <br> **MPJM Crush Holdings, LLC** <br> **2152 59th Street, Brooklyn,** <br> **NY 11204 (100% ownership** <br> **after purchasing 50% from** <br> **Tuthill and 50% from Pliny)** | March 17, 2010 | MPJM Crush holdings <br> 2152 59th Street, <br> Brooklyn, NY 11204 <br> Unsecured obligation |
| Date: Recorded/Filed on 02/21/2013, City | **Trustee's deed upon sale** <br> **MAAAS Enterprises, LP** | January, 9, 2013 | |

| Register File No.<br><br>(CRFN):2013000074430 | 8 Douglas Drive,<br><br>Holmdel, NJ 07783 (50% owner)<br><br>V-JAMA Holdings, LLC<br><br>224 93rd Street,<br><br>Brooklyn, NY 11209<br><br>(As to 50% ownership) | | |

**ASSIGNMENT OF DEED OF TRUST/ MORTGAGE # 1:**

82. An assignment of deed of trust/mortgage was filed as City register, file number 2007000405601 in the official records of the City register, Kings County, New York on August 7, 2007.

83. This document purports to be executed by Jeffrey Wain, president of Wainco, Inc., the general partner of Tuthill Finance; a true copy is hereto attached as **exhibit D.**

**ASSIGNMENT OF DEED OF TRUST/MORTGAGE # 2:**

84. An assignment of deed of trust was filed as city register file number 2007000607328 in the official records of the City register, Kings County, New York on December 11, 2007.

85. This document purports to executed by Joseph A. Anello, vice president of Sovereign Bank; A true copy is hereto attached as **exhibit E.**

**ASSIGNMENT OF DEED OF TRUST/MORTGAGE # 3:**

86. Assignment of deed of trust/mortgage was filed as city register file number

2008000477243 in the official records of the city register, Kings County, New York on

December 6, 2008.

87. This document purports to be executed by Jeffrey Wain, President of Wainco Inc., the

general partner of Tuthill Finance; a true copy is hereto attached as **exhibit F.**

## ASSIGNMENT OF DEED OF TRUST/MORTGAGE # 4:

88. A correction assignment of mortgage was filed as city register file number 2009000009473

in the official records of the city register, Kings County, New York on January 13, 2009.

89. This document purports to be executed by Joseph A. Anello vice president of Sovereign

Bank; a true copy is hereto attached as **exhibit G.**

## ASSIGNMENT OF DEED OF TRUST/MORTGAGE # 5:

90. An assignment of deed of trust/mortgage was filed as city register file number

2010000109954 in the official records of the city register, Kings County, New York, on April

1, 2010.

91. This document purports to be executed by Jeffrey Wain, president of Wainco, Inc., the

general partner of Tuthill Finance; a true copy is hereto attached as **exhibit H.**

## NOTICE OF TRUSTEE'S SALE:

92. A notice of trustee's sale of the bankruptcy estate of Kenneth G. Moxey for the sum of

$44,000.00 (forty four thousand dollars) to MAAAS Enterprises, LP and V-JAMA Holdings,

16

LLC was filed as city register file number 2013000074430 in the official records of the city register, Kings County, New York on February 21. 2013.

A true copy is hereto attached as **exhibit I.**

93. This document purports to be executed by Robert L. Pryor, the court appointed bankruptcy trustee.

94. The transfer is a conflict of interest and a violation of the bankruptcy court order dated December 11, 2012 that was signed by Judge Trust for two reasons; first, the bankruptcy Judge ordered the property to be sold to MPJM Crush Holdings for $625,000.00 or the highest bidder and item # 15 of the order states that if MPJM is held in default, they will forfeit their $10,000.00 deposit to the bankruptcy estate of Kenneth Moxey.

**Exhibit J.** Order of the bankruptcy court signed by Judge Alan Trust.

95. Second, Robert Pryor's fee was $16,000.00 for acting as the bankruptcy trustee in the transaction, but the trustee retained the law firm of Pryor and Mandelup, LLP to be his attorney. Pryor and Mandelup were paid $10,000.00 as the trustee's attorney but Richard Pryor is a partner and the general manager of the law firm which is a conflict of interest.

## LACK OF STANDING

96. Since a promissory note is only enforceable in its whole entirety and two different entities became the owners of the subject's note, no one of them could foreclose on plaintiff's property.

17

97. MPJM Crush Holdings was not a real party of interest and therefore lack standing to

enforce the note.

98. Both the deed of trust/mortgage and the promissory note must always point to the same

party at all times to have perfection of chain of title.

99. When a promissory note is sold or assigned, it therefore must be recorded in public record

to maintain perfected chain of title for security.

100. If there is a break in a chain of title, then bifurcation occurs, where the deed of

trust/mortgage points to one party, while the promissory note points to another party.

101. Once bifurcation occurs, then the security has been broken because New York State law

has been violated.

102. Where the promissory note goes, the deed of trust/mortgage must follow, not the other

way around.

103. The note was separated from the mortgage when the pretender lender Tuthill Finance

sold 50% of the mortgage to Pliny Syndications and further sold the other 50% of the

mortgage to MPJM Crush Holdings, thereby separating the note and the deed of

trust/mortgage, which is evident since both documents name different entities, and the

deed of trust has now been rendered unenforceable because the assignments are a

violation of the United States Supreme Court ruling of Carpenter v. Longan.

"The note and mortgage are inseparable; the former as essential, the latter as an incident.

An assignment of the note carries the mortgage with it, while an assignment of the latter

alone is a nullity." (Quoting Carpenter v. Longan, 83 U.S. (16 Wall) 271, 274 (1872))).

104. When Tuthill Finance split the mortgage into two parts and sold one half to Pliny

Syndications, the terms of the deed of trust/mortgage were violated, making the mortgage

invalid, which convert the debt from a secured instrument to an unsecured obligation, and

barred the lender from selling the property to collect on the collateral, because the lender

cannot enforce an instrument that is defective.

## THE TWO WAYS IN WHICH A MORTGAGE CAN BE ASSIGNED

105. A lender must prove that a valid transfer of the note was made to them by an

endorsement thereon, as required by the U.C.C. or that the lender had physical possession

thereof, prior to commencing the foreclosure action.

"A mortgage can be assigned in two ways; by the delivery of the bond (note) and mortgage

by the assignor to the assignee with the intention that all ownership interest be thereby

transferred or by a written instrument of assignment". Deutsche Bank Trust Co. Ams v.

[Peabody, 20 Misc 3d 1108 {A} {Sup Ct, Saratoga County 2008]. Thus, "Either a written

assignment of the underlying note or the physical delivery of the note... is sufficient to

transfer obligation, and the mortgage passes with the debt as an inseparable incident."

U.S. Bank, N.A, v Collymore, 68 AD3d 752, 754; Weaver Hardware Co. v Solomovitz, 235 NY

321, 331-332 [1923]; Payne v Wilson, 74 NY 348, 354-355 [1878]; Lasalle Bank Natl. Assn v.

Ahearn, 59 AD3d 911, 912, [3rd Dept 2009]; Mortgage Elec. Registration Sys., Inc. v Coakley,

41 AD3d 674 [2nd Dept 2007]; Flyer v Sullivan, 284 App Div 697, 699 [1954].

"Numerous trial courts throughout the second department have ruled that, a note secured

by a mortgage is a negotiable instrument, and a transfer requires an endorsement on the

instrument itself or on a paper so firmly affixed thereto as to become a part thereof, as per

UCC Section 3-202 (2), in order to effectuate a valid assignment of the instrument". See, Deutsche Bank Trust Company Americas v. Thanhauser, 2013 NY Slip Op 30096 (U) [Sup Ct Suffolk Co 2013]; HSBC Bank USA v Picarelli, 36 Misc 3d 1218 (A) [Sup Ct, Queens Co 2012]; Deutsche Bank National Trust Company v Vasquez, 2012 NY Slip Op 31395 (U) [Sup Ct Nassau Co 2012]; HSBC Bank USA, National Association v Hagerman, 2011 NY Slip Op 33344 (U) [Sup Ct, Richmond Co]; HSBC Bank USA, National Association v Coyo, 934 NYS2d 792 {Sup Ct, Kings Co 2011}; The Citi Group/Consumer Finance, Inc. v Platt, 33 Misc 3d 123 (A) [Sup Ct Queens Co 2011};  IndyMac Bank, FSB v Garcia, 28 Misc 3d 1202 (A) [Sup Ct Suffolk Co 2010]; HSBC Bank USA, National Association v Miller, 26 Misc 3d 407 [Sup Ct Sullivan Co 2009]; Lasalle Bank National Association v Lamy, 12 Misc 3d 1191  (A) Sup Ct Suffolk Co 2006].

"The assignment of a mortgage without the note was defective, as the transfer of the mortgage without the debt (Note) is a nullity". Citimortgage, Inc. v Stosel, 2011 NY Slip Op 8319 [2nd Dept] citing U.S. Bank, N.A. v Collymore, 68 AD3d 752, 754 [2nd Dept 2009]; Bank of NY v Silverberg, 86 AD3d 274, 2nd Dept.

"Without either proof of a proper written assignment of the underlying note or proof of the physical delivery of the note prior to the commencement of the foreclosure action, the plaintiff failed to sufficiently show either the proper transfer of the obligation, or that the mortgage passed as an inseparable incident to the debt". See, U.S. Bank, N.A. v Collymore, 68 AD3d 752; IndyMac Bank, F.S.B. v Garcia, 28 Misc 3d 1202 (A).

## SPLITTING OF A MORTGAGE INTO PARTS AND OR FRACTIONS

106.   When a mortgage loan has been divided, it has been converted from a mortgage debt into an unsecured obligation. The real and beneficial parties are the shareholders holding a fraction of the note. Therefore, no one person or entity may foreclose on the property because they own a fraction of the mortgage loan and reattachment of the loan/note to the deed of trust/mortgage is impossible.

107.   Reattachment is impossible for the following reasons;

**PERMANENT CONVERSION:** The promissory note has been converted into an unsecured obligation as a permanent fixture and its nature is forever changed. It is now and forever an unsecured obligation and governed by the Federal Fair Debt Collection Practices Act. Since the deed of trust/mortgage secures the promissory note, once the promissory note is destroyed, the deed of trust/mortgage secures nothing. Therefore, the deed of trust/mortgage is invalid.

108.   Tuthill Finance, Pliny Syndications and MPJM Crush Holdings acted as debt collectors of an unsecured obligation.

109 Tuthill Finance, Pliny Syndications and MPJM Crush Holdings deceived the Kings County Supreme Court, the Kings County Clerk, and plaintiff when they tried to re-attach the note to the deed of trust/mortgage as if nothing had happened, which is called adhesion.

110. **BROKEN CHAIN OF ASSIGNMENT:** Under the uniform commercial code (UCC), the promissory note is a one of a kind instrument. All assignments (much like endorsements on the back of a check) have to be done as a permanent fixture onto the original promissory note. The original promissory note has the only legally binding chain of title.  Without a proper chain of title, the instrument is faulty.

111. Under the Uniform commercial code, the original promissory note is the only valid and legally binding chain of title for the note. Tuthill Finance, Pliny Syndications and MPJM Crush Holdings intentionally recorded fraudulent assignments with the Kings County Clerk, in order to convince the court that they have the right to foreclose which violated New York Penal Law, Section 175. 35 and further violated New York Penal Law, Section 175.10 when Tuthill Finance, Pliny Syndications and MPJM Crush Holdings engaged in a conspiracy to falsify their business records.

## SERVICING DISCLOSURE

Code of Federal regulation, title 12: Section 226 (included in the appendix).

112. Section 226.39 mortgage transfer disclosures (a) scope. The disclosure requirements of this section apply to any covered person, except as otherwise provided in this section. For purposes of this section:

(1) A covered person means any person, as defined in section 226.2(a) (22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through purchase, assignment, or other transfer, and who acquires more than one mortgage loan in any twelve month period. For purposes of this section, a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan or it is assigned to the servicer solely for the administrative convenience of the servicer in servicing the obligation.

## FEDERAL RULES OF CIVIL PROCEDURE, RULE 17

22

113.  Under the Federal Rules of Civil Procedure rule 17, "An action must be pursued by a party of real interest".

114.  The subject's note is not negotiable because it contains several instructions or undertakings other than the payment of money, such as instructions for the borrower to pay late charges and instructions regarding prepayment.

115. Since a promissory note is only enforceable in its whole entirety and more than one entity became the owners of the subject's note, no one of them could foreclose on plaintiff's property.

116. MPJM Crush Holdings was not a real party of interest and therefore lacked standing to enforce the note.

117.  Both the deed of trust/mortgage and the promissory note must always point to the same party at all times to have perfection of chain of title.

118.  When a promissory note is sold or assigned, it therefore must be recorded in the public record to maintain perfected chain of title for security.

119.  If there is a break in the chain of title, then bifurcation occurs, where the deed of trust/mortgage points to one party, while the promissory note points to another party.

120.  Once bifurcation occurs, then the security has been broken because the laws of the State of New York have been violated.

121. Where the promissory note goes, the deed of trust/mortgage must follow, not the other way around.

122. The note was separated from the mortgage when the pretender lender Tuthill Finance sold the mortgage to two different entities, thereby separating the note and the deed of

trust/mortgage, which is evident since both documents name different entities, and the

deed of trust has now been rendered unenforceable, because the assignments are a

violation of the United States Supreme Court ruling of Carpenter v. Longan.

"The note and mortgage are inseparable; the former as essential, the latter as an incident.

An assignment of the note carries the mortgage with it, while an assignment of the latter

alone is a nullity." (Quoting Carpenter v. Longan, 83 U.S. (16 Wall) 271, 274 (1872))).

123. When Tuthill Finance split the mortgage into two halves and sold the halves separately,

they violated the terms of the deed of trust/mortgage in item # 16, which made the

mortgage invalid, convert the debt from a secured instrument to an unsecured obligation,

which barred the lender from selling the property to collect on the collateral, because the

lender cannot enforce an instrument that is defective.

## PERFECTION OF CHAIN OF TITLE

124. Any entity wishing to foreclose on a property must be able to demonstrate in writing, a

clear and valid chain of title for the mortgage in question.

"The possession of a promissory note secured by a mortgage is not sufficient to

demonstrate authority to foreclose and a party must have been validly assigned the

mortgage in order to have authority to foreclose". U.S. Bank National Ass'n v. Ibanez, 941

N.E. 2d 40 (Mass. 2011).

## DEFECTIVE TITLE CANNOT BE FIXED

125. Tuthill Finance, Pliny Syndications and MPJM Crush Holdings have to demonstrate

perfection of title at the time the notice of default was issued.

## THE FORECLOSING PARTY MUST SHOW A PERFECTION OF THE CHAIN OF TITLE FOR THE DEED OF TRUST/MORTGAGE

126. If the mortgage is split from the note, then bifurcation occurred which leads to a defect in the chain of title, making the deed of trust/mortgage unenforceable. A foreclosure is void if the lender cannot demonstrate clear chains of title to the mortgage.

## LENDER MUST SHOW A PERFECTION OF THE CHAIN OF TITLE FOR THE PROMISSORY NOTE

127. A chain of endorsement following the uniform commercial code section 9-206, (Security interest arising in purchasing or delivery of Financial asset) in the form of a stamp on the back of the promissory note, from Tuthill Finance and Pliny Syndications to MPJM Crushing Holdings without recourse does not exist.

128. Title must show this chain of title of "Pay to the order of" in the back of the note, just like it would be on a check, from Tuthill Finance all the way to MPJM Crush Holdings. If MPJM Crush Holdings cannot show this chain of title ending with itself, it does not have perfection of title and is not eligible to collect.

129. In order to collect and enforce the note under the uniform commercial code section 9-301, MPJM Crush Holdings must demonstrate that it had the position of holder in due course, or having authority from the holder. Failing that, MPJM Crush Holdings committed theft.

## THE ISSUE OF A DEFECTIVE INSTRUMENT

130. If the promissory note has been divided, there is no one party that may come forth to lay claim on the promissory note. If no one party can be named, "the beneficiary" or "the lender", then the promissory note is defective.

131. If the loan assignments were not properly done, they cannot be fixed. MPJM Crush Holdings cannot simply reverse engineer the title of the deed of trust/mortgage or promissory note to make it better. Once an instrument is defective, it cannot be used to collect the debt.

132. If the terms of the deed of trust/mortgage can be shown to violate applicable State and or Federal laws, then it too is defective.

133. If the deed of trust/mortgage is defective, then it cannot be used to give MPJM Crush Holdings the due on sale clause, because the terms of the deed of trust/mortgage must be respected in whole and MPJM Crush Holdings cannot pick and choose which part to respect and which part to ignore.

134. MPJM Crush Holdings purchased an unsecured obligation and violated the Fair Debt Collection Practices Act (title 15 U.S.C. Section 1692) when they foreclosed on plaintiff's property.

## VIOLATIONS OF STATE LAW, FEDERAL LAW AND THE U.S. CONSTITUTION

135. When Tuthill Finance divided the mortgage and sold 50% to Pliny Syndications and the other 50% to MPJM Crush Holdings, it created a break in the chain of title, then bifurcation occurred where the deed of trust points to one party, while the promissory note points to another party.

136. Once bifurcation occurred, then the security has been broken.

137. Under the UCC, the original promissory note is the only valid and legally binding chain of title for the note.

138. Under Carpenter v. Longan, the deed of trust/mortgage must follow the promissory note, but if the promissory note is assigned to one party, while the deed of trust names another party, there is a break in the chain of title.

> "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." (Quoting Carpenter v. Longan, 83 U.S. (16 Wall) 271, 274 (1872))).

139. If no one party can be named the beneficiary or the lender, then the promissory note is defective. If the loan assignment was not properly done, it cannot be fixed.

140. A lender cannot simply reverse engineer the title of the deed of trust or promissory note to make it better. Once an instrument is defective, it cannot be used to collect the debt.

141. The terms of the deed of trust/mortgage must be respected in whole and one cannot pick and choose which part to respect and which part to ignore because a defective instrument is not enforceable.

142. When Tuthill Finance, Pliny Syndications and MPJM Crush Holdings intentionally recorded fraudulent assignments with the Kings County Clerk, they violated New York Penal Law, Section 175. 35

143. When Tuthill Finance, Pliny Syndications and MPJM Crush Holdings engaged in a conspiracy to falsify their business records, they violated New York Penal Law, Section 175.10.

144. Under the accounting rule FAS (Financial accounting standards) 140, once an asset has been sold, the lender loses control of the asset.

### FEDERAL PROTECTIONS SPECIFICALLY INTENDED FOR THESE VIOLATIONS

145. Federal laws existed to immediately halt and remedy these record setting violations of federally protected rights, including the Civil rights act and the Declaratory Judgment Act.

146. Substantial questions, documented in court proceedings, required exercising remedies for the repeated violations of federally protected rights. Plaintiff files this lawsuit raising causes of actions for which a court forum and relief was guaranteed under the laws and Constitution of the United States.

### CIVIL RIGHTS ACT

147. The Civil rights act was legislated to provide relief and damages to any person subjected to a violation of his or her Civil rights under color of State law. A record number of such violations occurred in the sham New York action, and the violations were documented in court records. The barrage of Civil rights violations invoked the mandatory duty for Judges to provide a court forum and relief under the Civil rights act.

148. Title 42 U.S.C. Section 1983 of the Civil rights act states:

"Every person who, under color or any Statue, ordinance, regulation, custom or usage, of any State of territory, subjects… any citizen of the United States… to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

## FRAUD UPON THE KINGS COUNTY CLERK, THE COURT AND UPON PLAINTIFF

149. Tuthill Finance, Pliny Syndications and MPJM Crush Holdings committed fraud upon the Kings County Clerk when they intentionally recorded fraudulent assignments with the Kings County Clerk, in violation of the New York Penal Law, Section 175. 35

150. Tuthill Finance, and Pliny Syndication committed fraud upon the court and fraud upon plaintiff when they commenced the foreclosure action stating they are both the owners of the mortgage, when the mortgage had become an unsecured obligation and was unenforceable.

151. Tuthill Finance committed fraud upon the court and fraud upon plaintiff when they filed a motion to appoint a receiver in foreclosure, substituting the plaintiff and amend the caption because the mortgage had become an unsecured obligation after it was split up into fractions.

152. MPJM Crush Holdings committed fraud when they prosecuted the foreclosure against plaintiff, stating that they are in fact a true party of interest when the mortgage had become an unsecured obligation and rendered unenforceable.

153. MPJM Crush Holdings committed fraud upon the bankruptcy court when they submitted a proof of claim stating that they are in fact the true party of interest.

"Fraud upon the court" has been defined by the 7th circuit court of appeals to "embrace the species of fraud which does, or attempts to, defile the court itself or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kenner v C.I.R.., 387 F. 3d 689 (1968); 7 Moore's federal practice 2d ed., p 512, ¶ 60.23

154. The 7th circuit further stated "A decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

("The maxim that fraud vitiates every transaction into which it enters..."); In Re: village of Willbrook, 37 Ill. App. 2d 393 (1962) ("It is axiomatic that fraud vitiates everything."); Dunham v Dunham, 57 Ill. App. 475 (1894), affirmed 162 Ill. 589 (1896); Skelly Oil Co., v Universal oil products Co., 338 Ill. App. 79, 86 N.E. 2d. 875, 883-4 (1949); Thomas Stasel v The American Home Security Corporation, 326 Ill. 350; 199 N.E. 798 (1935). If there is fraud on the court, then the judgment can be reversed. Essentially the judgment is "voidable", and there is no Statute of limitations on the voidability of a Judgment because of fraud upon the court.

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW, SECTION 349 BY A DEBT BUYER

155. The New York General Business Law, Section 349(a), broadly declares that deceptive acts and practices in the conduct of any business in New York State are unlawful. If an assigned debt lawsuit is commenced and contains factual allegations attesting to the defendant's liability, and if evidence to support the claim does not exist, or is not readily available, that conduct violates the New York general Business law, Section 349.

156. A debt buyer is not immune from liability under New York General Business Law, Section 349 because its deceptive actions occur in the context of pursuing civil litigation.

157. MPJM Crush Holdings is barred from any recovery by the doctrine of unclean hands for committing consumer violations of the Federal Fair Debt Collection Practices Act.

158. MPJM Crush Holdings used false, deceptive and misleading means to try to collect a debt, in violation of several sections of the FDCPA when they committed the following acts;

   (a) Bringing an action against plaintiff without any valid basis and without any valid evidentiary support.

   (b) Bringing an account stated claim against plaintiff when no account statements were ever mailed to or received by plaintiff.

   (c) Bringing an account stated claim against plaintiff without having in its possession admissible proof and or any personal knowledge that any account statements were mailed to or received by plaintiff.

   (d) Attempting to collect on an assigned account when plaintiff had not been notified of any assignment.

   (e) Attempting to collect amounts, including contractual interest, without admissible proof of its legal authority to collect the same.

GBL Section 349 "Prohibits deceptive and misleading business and its scope is broad indeed." Wilner v Allstate Ins. Co., 71 AD3d at 159. The statue, on its face, applies to "Virtually all economic activity, providing the courts with the authority to cope with the numerous, ever changing types of false and deceptive business practices which plague

consumers in our State." Karlin v. IVF America, Inc., 93 NY2d 282, 290-1 (1999); Accord, Wilner v Allstate Ins. Co., 71 AD3d at 160.

As currently understood, the law "Encompasses a significantly wider range of deceptive business practices that were never previously condemned by decisional law." Wilner v Allstate Ins. Co., 71 AD3d at 160, quoting Gaidon v. Guardian Life Ins. Co. of America, 96 NY2d 201, 201 (2000). "It was intended to be broadly applicable, extending far beyond the reach of common law fraud". Wilner v Allstate Ins. Co., Supra, quoting State of New York v. Feldman, 210 F Supp 2d 294, 301 (SDNY 2002); see also Gaidon v. Guardian life ins. Co. of America, 94 NY2d 330, 343 (1999).

"Stating a cause of action to recover damages for a violation of New York General Business law, Section 349 is fairly straight forward." Wilner v Allstate Ins. Co., 71 AD3d at 161. "In order to properly plead a cause of action under GBL Section 349, the party pleading the claim should identify consumer oriented misconduct which is deceptive and materially misleading to a reasonable consumer, and which causes actual damages." Wilner v Allstate Ins. Co., 71 AD3d at 162, citing inter alia Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 (1995).

"Deceptive conduct by a debt buyer in the course of civil litigation may violate a consumer's legal rights under GBL Section 349. When a debt buyer seeks the courts aid in enforcing an assigned debt claim, the debt holder should not commence the action unless it can readily obtain admissible proof that would make out a prima facie case. Such proof should include evidence that it actually owns the debt, that the defendant was given notice of the assignment, and that the underlying debt claim is meritorious". See generally Midland

Funding, LLC v Wallace, 2012 NY Slip Op 50008 (City Ct Mount Vernon); CACH, LLC v Fatima, 2011 NY Slip Op 51510 (Dist Ct Nassau Co.); DNS Equity Group v Lavalle, 2010 NY Slip Op 50298 (Dist Ct Nassau Co.); Palisades Collection, LLC v Kedick, 67 AD3d 1329 (4th Dept 2009); PRA III, LLC v Gonzalez, 54 AD3d 917 (2d Dept 2008).

## BREACH OF CONTRACT (TORTORTIOUS INTERFERENCE)

159.    Plaintiff had a legal and enforceable mortgage contract with Tuthill Finance, LP and item number 16 of the mortgage states, "This mortgage may not be changed or terminated orally".

160.    Tuthill Finance breached the mortgage contract without justification, when they breached item number 16 of the mortgage contract and split the mortgage into two parts, selling one half to Pliny Syndications and selling the other half to MPJM Crush Holdings.

161.    Tuthill Finance unilaterally modified the mortgage without plaintiff's written consent, thereby causing a break in the chain of the title.

162.    Tuthill Finance again breached the mortgage contract when they intentionally recorded fraudulent assignments with the Kings County Clerk, in violation of the New York Penal Law, Section 175. 35

163.    Tuthill Finance also breached the mortgage contract when they engaged in a conspiracy to falsify their business records, in violation of the New York Penal Law, Section 175.10

164.    As a direct of the breach by the defendant, plaintiff's title has been slandered because of the defendant's tortortious interference caused a break in the chain of title.

165.    As a proximate result, plaintiff's title is now defective.

## RELIEF DEMANDED BY THIS LAWSUIT

### (Declaratory Judgment relief)

166.    Title 28 U.S.C. Section 2201 of the declaratory judgment act requires that a Judge

provide a remedy in case of actual controversy to declare the rights and other legal

relations of any interested party seeking such declaration.

167.    Title 28 U.S.C. Section 2202 of that act provides for appropriate relief, including

damages, following the declaration of these rights.

168.    Plaintiff allege that an actual controversy exists with the defendants, that plaintiff has

suffered and continue to suffer great and irreparable harm, and that a declaratory

judgment should be issued, stating that:

169.    The orders and judgments rendered by Judge Bert A. Bunyan in the case of MPJM Crush

Holdings v. Kenneth Moxey are void, and that they violated federally protected rights,

including:

a.  The full faith and credit clause in the Federal Constitution, and in the full faith and credit

statue, title 28 U.S.C. Section 1738.

b.  The due process and equal protection clause of the Fourteenth Amendment.

c.  Decisions of the U.S. Supreme Court as stated in this complaint.

d.  That the holdings in the published decisions by Judge Bunyan, appointing a receiver in

foreclosure., substituting plaintiff and amending caption on August 20, 2010 violates

Federally protected rights and constitutes an unlawful and unconstitutional attack upon

the fundamental rights and protections guaranteed by the laws and Constitution of the United States.

e. That the holdings in the published decisions by Judge Bunyan, entering a judgment of foreclosure and sale against the subject property on June 18, 2012 in the sum of $957, 040.00 violates Federally protected rights and constitutes an unlawful and unconstitutional attack upon the fundamental rights and protections guaranteed by the laws and Constitution of the United States.

## ORDERS GRANTING SUMMARY JUDGMENT ARE VOID, AND FOREVER VOID

170.    As a matter of controlling U.S. Supreme Court decisions, orders rendered without jurisdiction are void. Orders rendered that violate constitutional due process are void. Repeated major constitutional due process violations occurred prior to, during and after the auction of plaintiff's property. The entire litany of such violations must be considered when recognizing the void nature of the orders that stole plaintiff's property. This law relating to void orders: "A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights". Sabariego v Maverick, 124 U.S. 261, 31 L Ed 430, 8 S Ct 461, and is not entitled to respect in any other tribunal.

171.    A void judgment is not entitled to the respect accorded a valid adjudication, but may be entirely disregarded, or declared inoperative by any tribunal in which effect is sought to be given to it. It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place. It is not entitled to enforcement. All proceedings founded on the void judgment are themselves regarded as invalid. A void judgment is regarded as a nullity, and the situation is the same as it would

be if there were no judgment. It is attended by none of the consequences of a valid

adjudication. It has no legal or binding force or efficacy for any purpose or at any place. It is

not entitled to enforcement. 30A Am Jur Judgments " 43, 44, 45.

Jordon v. Gilligan, 500 F.2 d 701, 710 (6th Cir. 1974) (" A void judgment is no judgment at all and
is without legal effect.") Lubben v. Selective Service System Local Bd. No. 27, 453 F. 2d 645 (1st
Cir. 1972). "A court must vacate any judgment entered in excess of its jurisdiction."); U.S. v
Holtzman, 762 F. 2d 720 (9th Cir. 1985).

An illegal order is forever void. An order that exceeds the jurisdiction of the court, is void, or
voidable, and can be attacked in any proceeding in any court where the validity of the judgment
comes into issue. (See Rose v. Himley (1808) 4 Cranch 241, 2 L ed 608; Pennoyer v. Neff (1877)
95 US 724, 24 L ed 565; Thompson v Whitman (1873) 18 Wall 457, 21 l ED 897: Windsor v.
Mcveigh (1876) 93 US 274, 23 L ed 914; McDonald v. Mabee (1917) 243 US 90, 37 Sct 343, 61 L
ed 608.

The limitations inherent in the requirements of due process and equal protection of the law
extend to judicial as well as political branches of Government, so that a judgment may not be
rendered in violation of those Constitutional limitations and guarantees. Hanson v Denckla, 357
US 235, 2 L Ed 2d 1283, 78 S Ct 1228.

### ORDERS BASED ON VOID ORDERS ARE VOID

A void judgment, or proceedings founded on void judgments, is void. 30A Am Jur Judgments "

43, 44, 45. A void judgment is a simulated one, or one apparently rendered, where some

essential element, which would authorize the court to proceed to judgment, is lacking.

Henderson v. Henderson, 232 NC 380, 100 SE 2 d 227. See restatement, Judgments, ' 8.

### ORDERS RENDERED WITHOUT AN OPPORTUNITY TO BE HEARD ARE VOID

172.    It is a fundamental doctrine of law that a party to be affected by a personal judgment

must have his day in court and an honest opportunity to be heard.

"A judgment of a court without hearing the party or giving him an opportunity to be heard is not a judicial determination of his rights. Sabariego v. Maverick, 124 US 261, 31 L Ed 430, 8 S Ct 461, and is not entitled to respect in any other tribunal. It is a fundamental doctrine of law that a party to be affected by a personal judgment must have his day in court, and an opportunity to be heard. Renaud v. Abbott, 116 US 277, 29 L Ed 629, 6 S Ct 1194. Every person is entitled to an opportunity to be heard in a court of law upon every question involving his rights or interests, before he is affected by any judicial decision on the question. Earle v Mcveigh, 91 US 503, 23 L Ed 398."

## PATTERN OF FRAUD PROVIDES ANOTHER ELEMENT TO THE VOID ORDERS

In Johnson v. Virginia, 373 U.S. 61 (1963), the court held:

The validity of a judgment may be affected by fraud in the obtainment thereof. Nudd v. Burrows, 91 US 26, 23 L Ed 286: Wyman v. Newhouse (CA2d) 93 F2d 313, 115ALR 460, cert den 303 US 664, 82 L Ed 1122, 58 S Ct 831; or by collusion between parties. Branan v. Feldman, 158 GA 377, 123 SE 710, especially where the complaining party was prevented from having his interest fairly presented or fully considered by the court, and the court was imposed upon. Harjo v. Johnston, 187 Okla 561, 104 p2d 985.

A judgment may not be rendered in violation of Constitutional protections. The validity of a judgment may be affected by a failure to give the Constitutionally required due process notice. Prather v Loyd, 86 Idaho 45, 382 p2d 910. See also restatements, judgments ' 4 (b) and an opportunity to be heard. Earle v Mcveigh, 91 US 503, 23 L Ed 398.

Orders violating due process protections of the laws requires reversal. Johnston v. Virginia, 373 U.S. 61 (1963).

## ORDERS BASED UPON VOID ORDERS ARE ALSO VOID

"Fraud related to rendering orders or collusion in connection with the rendition of a judgment is regarded as rendering the judgment void":

League v. Deyoung US 11 How 184, 13 L Ed 657; Re Milliman's estate 2 Ariz App 155, 406 p2d 873, 154 ALR 818, 831: Nudd v. Burrows, 91 U.S. 26, 23 L Ed 286: Wyman v. Newhouse (CA 2d)

93 F2d 313, 115 ALR 460, cert den 303 US 664, 82 L Ed 1122, 58 S Ct 831. "Collusion between the parties also renders orders or judgments void". Branan v. Feldman, 158 Ga 377. 123 SE 710, "Especially where the complaining party was prevented from having his interest fairly presented or fully considered by the court, and the court was imposed upon". Harjo v. Johnson, 187 Okla 561, 104 p2d 985. "Fraud or collusion in connection with the rendition of a judgment is regarded as rendering the judgment void". Leagu v. Deyoung app 155, 406 p2d 873, 154 ALR 818, 831.

### VOID ORDERS REMAIN VOID EVEN WHEN CONFIRMED BY APPELLATE COURT

The general rule is that an order rendered in violation of law cannot be cured by subsequent proceedings. In Soto v. Hall 191 C. 510, 217 p 520, the court held that a void judgment is not rendered valid by a mere affirmance on appeal. See also Langston v. Nash, 192 GA 417, 15 SE 2d 481. Such a judgment cannot be validated by citing the parties against whom it was rendered, to show cause why it should not be declared valid. Jewett v. Iowa Land Co. 64 Minn 531 67 NE 639, or by affirmance by an appellate court, at least if such affirmance is put upon grounds not touching the validity of the judgment. (See 5 Am Jur 2d, Appeal and error Section 935)

### VIOLATING EVERY LEGAL CRITERIA FOR THEIR ISSUANCE

173.    The injunctions violated every legal criteria required for their issuance, in addition to the overriding Constitutional due process violations:

174.    Instead of meeting the requirement to halt violations of laws and Constitutional safeguards that were occurring, the injunctive orders insured that the violations would continue without judicial interference.

175.    Instead of meeting the requirement to protect the person suffering harm from unlawful acts, the orders deprived the plaintiff, who was suffering great harm from these violations,

of the protection in law, while simultaneously protecting the parties perpetrating the violations.

176.    Instead of meeting the legal requirement to protect public interests, the injunctions harmed these interests by subverting legal and Constitutional protections and protecting the people perpetrating these interests.

177.    Findings of fact and conclusions of law were necessary legal requirements for rendering an injunction, and this requirement was also violated. The law requires that the judge rendering an injunction make findings of fact and conclusions of law specifically addressing each of these requirements. This was never done, because plaintiff was never served. Rule 52 (a) requires that the court granting or denying a preliminary injunction shall set forth the findings of fact and conclusions of law which constitute the grounds of its action.

In Granny Good Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, Local No. 70 of Alameda County (1974) 415 US 423, 994 S Ct 1113, 39 L ed 2d 435, the court held that where a temporary restraining order had been continued beyond the time limits permitted by Rule 65(b) and the required findings of fact and conclusions of law have not been set forth, the order is invalid; county of Nassau V. Cost of Living Council (Temporary Emergency Ct. of Appeals, 1974) 499 F2d 1340.

## STATEMENT OF OTHER CLAIMS

## COUNT ONE

### (DISCLOSURE VIOLATION PURSUANT TO 15 U.S.C. 1635, ET. SEQ.)

### (As to Tuthill Finance and MPJM Crush Holdings)

178.    All preceding paragraphs are incorporated herein as though fully set forth.

179.    The present case credit transaction is governed by the disclosure requirements of title 15 U.S.C. Section 1635.

180.    The U.C.C. 1 lien applies to the transaction under revised article 9 and to defendant MPJM Crush Holdings, because lien rights on the property arose in favor of MPJM Crush Holdings as a result of the transaction.

181.    Tuthill Finance and MPJM Crush Holdings failed and/or refused to meet the disclosure of revised article 9 of the UCC, by not providing the notice required or filing it before, during or immediately after the settlement, as mandated under the article.

182.    Plaintiff is specifically in the class of persons this statue was designed to protect.

183.    As a direct, proximate, and forseeable result of Tuthill Finance and MPJM Crush Holdings failure to provide proper notices, plaintiff is subject to loss of property and loss of use of property and other damages as a result of the failure of Tuthill Finance and MPJM Crush Holdings.

## COUNT TWO

**DISCLOSURE VIOLATIONS, PURSUANT TO TITLE 12, CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.**

**(As to Tuthill Finance and MPJM Crush Holdings)**

184.    All preceding paragraphs are incorporated herein as though fully set forth.

185.    The federal reserve board interpretation, title 12 code of federal regulations part 226, supplement I, paragraph 23 (a) (1), provides that in the present case the transaction is rescindable for reasons above and below stated.

186.    The disclosures made in relation to the consumer credit transaction were not presented

in the manner required by law. Furthermore, the disclosures were not grouped together

and were not segregated from everything else as required by title 12 of federal regulations,

Section 226.17 (a) (1) and in this case were not given at all.

187.    Plaintiff is specifically in the class of persons this statue was designated to protect.

188.    As a direct, proximate, and forseeable result to provide proper notice/disclosure by

Tuthill Finance and MPJM Crush Holdings, plaintiff is subject to loss of property and loss of

use of property and other damages as a result of their failure.

### COUNT THREE

**RIGHT TO RESCIND VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS
SECTION 226, ET. SEQ.**

**(As to Tuthill Finance and MPJM Crush Holdings)**

**189.** All preceding paragraphs are incorporated herein as though fully set forth.

190. The right to rescind or cancel settlement documents was unsigned by both parties, and

was not disclosed or given, as required by title 12 code of federal regulations, Section 226.18 et

seq.

191. Plaintiff is specifically in the class of persons this statue was designed to protect.

192. As a direct, proximate, and forseeable result of Tuthill Finance and MPJM Crush Holdings

failure to provide proper/disclosure, plaintiff is subject to loss of property and loss of use of

property and other damages as a result of their failure.

41

## COUNT FOUR

**RIGHT TO CANCEL VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.**

### (As to Tuthill Finance and MPJM Crush Holdings)

193. All preceding paragraphs are incorporated herein as though fully set forth.

194. There was no separate form to cancel, as required by title 12 Code of Federal regulation, Section 226 et seq.

195. Plaintiff is specifically in the class of persons this statue was designed to protect.

196. As a direct, proximate, and forseeable result of Tuthill Finance and MPJM Crush Holdings failure to provide proper notice/disclosure, plaintiff is subject to loss of property and loss of use of property and other damages as a result of their failure.

## COUNT FIVE

**DECEPTIVE GROUPING VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.**

### (As to Tuthill Finance and MPJM Crush Holdings)

197. All preceding paragraphs are incorporated herein as though fully set forth.

198. The interest disclosures were not given together with other information within the documents.

42

199. Plaintiff is specifically in the class of persons this statue was designed to protect.

200. As a direct, proximate, and forseeable result of Tuthill Finance and MPJM Crush Holdings failure to provide proper notice/disclosure, plaintiff is subject to loss of property and loss of use of property and other damages as a result of their failure.

## COUNT SIX

**NO GOOD FAITH ESTIMATE VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.**

### (As to Tuthill Finance and MPJM Crush Holdings)

201. All preceding paragraphs are incorporated herein as though fully set forth.

202. Plaintiff, as required by 12 code of Federal regulation, Section 226. 18 (c) and 12 U.S.C. 2601 et seq., received no good faith estimate copy.

203. Plaintiff is specifically in the class of persons this statue was designed to protect.

204. As a direct, proximate, and forseeable result of Tuthill Finance and MPJM Crush Holdings failure to provide proper notice/disclosure, plaintiff is subject to loss of property and loss of use of property and other damages as a result of their failure.

## COUNT SEVEN

**CONSUMER STATEMENT MISSING VIOLATIONS, PURSUANT TO TITLE 12 CODE OF FEDERAL REGULATIONS SECTION 226, ET. SEQ.**

**(As to Tuthill Finance and MPJM Crush Holdings)**

205. All preceding paragraphs are incorporated herein as though fully set forth.

206. A statement that the consumer should refer to the appropriate contract document and clause for information about nonpayment, default, and the right to accelerate was not given, as required by title 12 code of federal regulation, section 226.18 (p).

207. Plaintiff is specifically in the class of persons this statue was designed to protect.

208. As a direct, proximate, and foreseeable result of Tuthill Finance and MPJM Crush Holdings failure to provide proper notice/disclosure, plaintiff is subject to loss of property and loss of use of property and other damages as a result of their failure.

## COUNT EIGHT

**DISCLOSURE VIOLATIONS, PURSUANT TO TITLE 15 U.S.C. SECTION 1601, ET. SEQ. AND REGULATION Z.**

**(As to Tuthill Finance and MPJM Crush Holdings)**

209. All preceding paragraphs are incorporated herein as though fully set forth.

210. Tuthill Finance and MPJM Crush Holdings violated the consumer credit protection act, title 15 United States Code, Section 1601 et seq., and regulation Z, title 12 code of Federal regulations, part 226, which was adopted pursuant to such act, by failing to properly make the disclosures required by the act and regulation Z, as herein after more particularly set forth.

211. Plaintiff is specifically in the class of persons this statue was designed to protect.

44

212. As a direct, proximate, and foreseeable result of Tuthill Finance and MPJM Crush Holdings failure to provide proper notice, plaintiff is subject to loss of property and loss of use of property and other damages as a result of their failure.

## COUNT NINE

**FAILURE TO DISCLOSE CALCULATION OF MORTGAGE BALANCE, PURSUANT TO TITLE 12 CFR SECTION 226.4, ET. SEQ.**

**(As to Tuthill Finance and MPJM Crush Holdings)**

213. All preceding paragraphs are incorporated herein as though fully set forth.

214. Tuthill Finance and MPJM Crush Holdings failed to disclose in or with the disclosure statements, because no disclosure statements were given, the amount of the balance to which the rate was applied and an explanation of how that balance was determined and further failed to disclose the fact that the balance is determined without first deducting all credits and payments as required by title 12 code of federal regulations, Section 226.4 et seq.

215. Plaintiff is specifically in the class of persons this statue was designed to protect.

216. As a direct, proximate, and foreseeable result of Tuthill Finance and MPJM Crush Holdings failure to provide proper acceleration notice, plaintiff is subject to loss of property and loss of use of property and other damages as a result of their failure.

### COUNT TEN

### FAILURE TO DISCLOSE ITEMIZATION OF CHARGES, PURSUANT TO TITLE 12 U.S.C. 2610 ET SEQ.

### (As to Tuthill Finance and MPJM Crush Holdings)

217. All preceding paragraphs are incorporated herein as though fully set forth.

218. Tuthill Finance and MPJM Crush Holdings failed to disclose in or with the acceleration statement the amounts, itemized and identified by type, of charges other than finance charges debited to the account during the acceleration period as required by title 12 code of federal regulations, section 226.21.

219. Plaintiff is specifically in the class of persons this statue was designed to protect.

220. As a direct, proximate, and foreseeable result of Tuthill Finance and MPJM Crush Holdings failure to provide proper notice, plaintiff is subject to loss of property and loss of use of property and other damages as a result of their acts.

### COUNT ELEVEN

### VIOLATIONS OF THE FAIR DEBT COLLECTIONS PRACTICES ACT"FDCPA" 15 U.S.C.SECTION 1692

### (As to Tuthill Finance and MPJM Crush Holdings)

221. All preceding paragraphs are incorporated herein as though fully set forth.

222. Tuthill Finance and MPJM Crush Holdings misrepresented the character and legal status of the unlawful debt in violation of 15 U.S.C. 1692 (e) (2), by sending false correspondence to

plaintiff and third persons and assisting in the filing of an unlawful foreclosure action in the Kings County Supreme Court.

223. Tuthill Finance and MPJM Crush Holdings threatened to take and did take actions that they could not legally take without the ruse and falsities committed upon plaintiff in violation of 15 U.S.C. 1692 (e) (5).

224. Tuthill Finance and MPJM Crush Holdings engaged in conduct that disgraced the plaintiff in violation of 15 U.S.C. 1692 (e) (7), by sending false correspondence to plaintiff and third persons and assisting in the filing of an unlawful foreclosure action in the Kings County Supreme Court.

225. Although plaintiff disputed the alleged debt, Tuthill Finance and MPJM Crush Holdings communicated false credit information to others and failed to communicate that the debt was disputed, when it was disputed, in violation of 15 U.S.C. 1692 (e ) (8).

226. Tuthill Finance and MPJM Crush Holdings stated numerous times that they were the lawful owners in interest of the debt or empowered to speak on behalf of the owner in interest, yet knew or should have known that they were not, and as such violated 15 U.S.C. 1692 (e) (5).

227. Tuthill Finance and MPJM Crush Holdings engaged in unfair and deceptive means and attempts to collect the alleged debt in violation of 15 U.S.C. (1692 (f).

228. Tuthill Finance and MPJM Crush Holdings attempted to collect the alleged debt in a manner and amount not authorized by the original Mortgage and Note in violation of 15 U.S.C. 1692 (f) (1).

229. Tuthill Finance and MPJM Crush Holdings threatened to unlawfully repossess the plaintiff's property in violation of 15 U.S.C. 1692 (f) (8).

230. Plaintiff suffered actual damages from these violations.

231. Pursuant to 15 U.S.C. 1692 (k), plaintiff is entitled to actual damages, statutory damages as set forth herein, and reasonable attorney fees and costs.

232. Because the conduct of Tuthill Finance and MPJM Crush Holdings were frequent and persistent and because the nature of the violations of the FDCPA were so egregious and because the FDCPA violations were a part of a deliberate scheme, plaintiff is entitled to the maximum possible relief permitted under 15 U.S.C. 1692k (a).

## COUNT TWELVE

### VIOLATIONS OF RESPA 12 U.S.C. 2601 ET SEQ.

### (As to Tuthill Finance and MPJM Crush Holdings)

233. All preceding paragraphs are incorporated as though fully set forth herein.

234. Tuthill Finance and MPJM Crush Holdings failed to timely inform plaintiff of any alleged appointments, assignments and transfers of the mortgage in violation of RESPA.

235. Tuthill Finance and MPJM Crush Holdings failed to timely notify plaintiff of any change of servicers.

236. Plaintiff have previously made written demands to Tuthill Finance and MPJM Crush Holdings to show evidence of standing to claim a debt and they have refused to evidence such standing.

## COUNT THIRTEEN

### SLANDER OF TITLE/PETITION TO QUIET TITLE

### (As to Tuthill Finance and MPJM Crush Holdings)

237.    Plaintiff incorporates by this reference each preceding paragraph of this complaint as if set forth fully herein.

238.    Tuthill Finance and MPJM Crush Holdings have knowingly and maliciously communicated, in writing, false statements that have the effect of disparaging the plaintiff's title to property. The plaintiff has incurred special damage as a result.

239.    Tuthill Finance and MPJM Crush Holdings have no legally enforceable claim, interest or standing to sue as to the note or mortgage in question and the claim is a cloud on plaintiff's title and should be quieted under New York State Law.

240.    Plaintiff is the rightful owner of the subject property.

241.    Plaintiff is the legal titleholder of his property.

242.    Tuthill Finance, Sovereign Bank, Pliny Syndications, MPJM Crush Holdings, MAAAS Enterprises and V-JAMA Holdings have knowingly and unlawfully caused a cloud to be recorded against the title of plaintiff's property and have caused to be sent notices of default and foreclosures, and have served and filed mortgage documents that claim an interest in the property of the plaintiff.

49

243.    Any purported transfer of any interest in plaintiff's real estate was wrongful and invalid

because the endorsements, assignments, foreclosures or purported foreclosures were

invalid and were not conducted in accordance with the laws of the State of New York.

244.    Tuthill Finance, Sovereign Bank, Pliny Syndications, MPJM Crush Holdings, MAAAS

Enterprises and V-JAMA Holdings knew or should have known that such transfers were

wrongful and invalid and the publication of an ownership interest in the plaintiff's property

is, therefore false.

245.    The recording of the mortgages published the information to third parties.

246.    Because of said wrongful publication of an ownership interest in the plaintiff's property,

plaintiff have incurred damages and will continue to incur attorney's fees and costs related

to this litigation, in an amount to be proven at trial.

247.    Plaintiff seeks a declaratory judgment against Tuthill Finance and MPJM Crush Holdings

stating that the parties have violated plaintiff's rights and that the said defendants had and

have no right to hold mortgages in the name of Tuthill Finance or MPJM Crush Holdings

and or foreclosure on the plaintiff's property and that MPJM Crush Holdings are entitled to

no further payments from the plaintiff or recognition in plaintiff's title to his property.

248.    The plaintiff is entitled to a reformation of these notes as unsecured notes or as partially

or wholly discharged notes and a right to reformation of the contracts with the persons or

entities who are owed obligations because of funding of the loans of the plaintiff.

## COUNT FOURTEEN

### FRAUD AND MISREPRESENTATION, NEW YORK GENERAL OBLIGATIONS LAW, SECTION 349

### (Tuthill Finance and MPJM Crush Holdings)

50

249.    Plaintiff re-alleges and affirms each preceding paragraph of this complaint and
incorporates such as if alleged anew.

250.    On or about February 2009, Tuthill Finance and Pliny Syndications intentionally
instituted foreclosure against plaintiff based upon fraudulent documents in the Kings
County Supreme Court.

251.    On March 17, 2010 Tuthill Finance sold its 50% fractional portion of the subject's
mortgage to MPJM Crush Holdings and Pliny Syndications sold its 50% fractional portion of
the subject's mortgage to MPJM Crush Holdings which continued the foreclosure action
against plaintiff based upon fraudulent assignments in the office of the Kings County Clerk
and fraudulent documents filed in the Kings County Supreme Court.

252.    The deceptive acts of Tuthill Finance and MPJM Crush Holdings and their employees and
agents resulted in a multitude of misrepresentations, including but not limited to the true
identity of the lender, and the fraudulent misrepresentation as to the mortgage.

253.    Tuthill Finance induced the plaintiff to enter into the transaction when there existed in
the inducement and execution material representations that were false and were known to
be false or were made recklessly, which inducement was reasonably acted upon by plaintiff
and acted upon in reliance thereon and plaintiff have suffered injury proximately due to
such.

254.    The scheme employed by Tuthill Finance and MPJM Crush Holdings, intentionally had
the capacity and tendency to deceive plaintiff, and did deceive plaintiff and the clerk of the
court.

255.    The acts of Tuthill Finance and MPJM Crush Holdings violated standards of fair trade practices, and affected commerce.

256.    As a result of Tuthill Finance and MPJM Crush Holdings unfair and deceptive trade practices, plaintiff was proximately injured in his business and his person.

257.    After plaintiff filed for bankruptcy, the trustee sold plaintiff's property in a non-arms length transaction to MAAAS Enterprises and V-JAMA Holdings for $44,000.00 but the property is estimated to be worth some $900,000.00

258.    The deceptive acts of Tuthill Finance and MPJM Crush Holdings constitute fraudulent misrepresentation and the parties named above are jointly and severally liable for their acts of fraud by their misrepresentation and all damages stemming from such, including punitive damages and attorney fees.

### COUNT FIFTEEN

### NEGLIGENT SUPERVISION

### (Tuthill Finance and MPJM Crush Holdings)

259.    Plaintiff re-alleges and affirms each preceding paragraph of this complaint and incorporates such as if alleged anew.

260.    Tuthill Finance and MPJM Crush Holdings had a duty of care to supervise the actions of their employees and agents.

261.    The actions of the employees and/or agents of Tuthill Finance and MPJM Crush Holdings, as previously alleged, were unlawful and violated plaintiff's property rights.

262.    Tuthill Finance and MPJM Crush Holdings, knew or should have known that their employees and/or agents were acting unlawfully.

263.    As a result of the negligent supervision by Tuthill Finance and MPJM Crush Holdings, plaintiff was proximately injured by the unlawful acts of their employees and/or agents.

264.    An agency relationship exists between the assignor and the assignee defendants.

265.    The actions of assignee defendants were done on behalf of and at the direction of the assignor defendants and within the scope of their agency relationship.

266.    As a result of the actions of the assignor defendants and the assignee defendants, the plaintiff was injured

## COUNT SIXTEEN

### COMMON LAW FRAUD AND INJURIOUS FALSEHOOD

### (Tuthill Finance, and MPJM Crush Holdings)

267.    Plaintiff incorporate by this reference each paragraph of this complaint as if set forth fully herein.

268.    The publicly filed false mortgage assignments enabled Tuthill Finance and MPJM Crush Holdings to perpetrate the fraudulent foreclosure.

269.    Tuthill Finance and MPJM Crush Holdings knew or should have known the material representations were false.

270.    The material representations to the plaintiff were made so that the court and the plaintiff would believe that Tuthill Finance and MPJM Crush Holdings had a legitimate claim in the property. The plaintiff relied on such and the plaintiff was injured as a result with the facing of foreclosure litigation.

271.   Tuthill Finance and MPJM Crush Holdings fraudulently concealed their wrongdoings and prevented plaintiff from discovering their cause of action.

272.   Plaintiff has been injured by Tuthill Finance and MPJM Crush Holdings and has remained in ignorance of it without any fault or want of diligence or care on his part.

273.   Tuthill Finance and MPJM Crush Holdings made many misleading statements that the loan contained certain terms desirable to the consumer when it did not.

274.   Tuthill Finance and MPJM Crush Holdings use of deceit and or trickery caused plaintiff to act to their disadvantage.

## COUNT SEVENTEEN

### (Violation of Civil Rights Act, Title 42 U.S.C. Section 1983)

### (David A. Betron, Tuthill Finance, MPJM Crush Holdings)

275.   Plaintiff repeats and realleges all preceding paragraphs by reference, as if fully stated in this count.

276.   David A. Betron, Tuthill Finance, and MPJM Crush Holdings directly and indirectly violated, aided and abetted the violations of plaintiff's civil and Constitutional rights under color of State law, and caused plaintiff to suffer great and irreparable personal and financial harm. By these acts they violated title 42 U.S.C. Sections 1983-1986.

## COUNT EIGHTEEN

### (Conspiracy to Interfere with Civil Rights, Title 42 U.S.C. Section 1985)

### (David A. Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor)

54

277.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

278.    David A. Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor violated title 42 U.S.C. Section 1985, by engaging in a conspiracy to violate plaintiff's Civil rights, and to aid and abet the violations, in the case of MPJM Crush Holdings v. Kenneth Moxey . The sequence of events in the Kings County Supreme Court and Federal bankruptcy Court of the Eastern District of New York clearly met the prima facie evidence of a conspiracy, the existence of which is a matter of fact to be determined by a jury, as in every matter of fact stated in this complaint.

279.    David A. Betron, Tuthill Finance, Alan Drezin and Richard Pryor aided and abetted the conspiracy under title 18 U.S.C. Section 241 which is a conspiracy against the rights of citizens. (This statue states that if two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same, they shall be fined or imprisoned or both).

280.    Plaintiff suffered great and irreparable harm as a result of the unlawful and unconstitutional acts which occurred in the Kings County Supreme Court and the Bankruptcy Court of the Eastern District of New York.

281.    These harms included; loss of plaintiff's valuable property, as well as from damage to plaintiff's credit because of the fraudulent foreclosure judgment entered against plaintiff on June 18, 2012 for $957,040.00, for legal fees to plaintiff's attorney of $1,500.00 to defend the foreclosure, fees to the receiver of rents Alan Drezin for $4,064.77, fees to the

receiver's appointed property manager Douglas Rosenberg of BPC Management for $18,750.00, fees to the receivers attorney Michael J. Ficchi, Jr of $3,000.00, fees to the bankruptcy trustee Richard Pryor of $16,000.00, fees to the law firm of Pryor and Mandelup, LLP that represented the bankruptcy trustee of $10,000.00 (which is 50% owned by Richard Pryor), loss of rents to plaintiff from August 20, 2010 to January 29, 2013 totaling $ 153, 660.00 and severe emotional distress.

## COUNT NINETEEN

### (Failure to Prevent Civil Rights Violations, Title 42 U.S.C. Section 1986)

**(As to David Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor)**

282.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

283.    The court appointed receiver of rents Alan Drezin and the bankruptcy trustee Robert Pryor violated their responsibilities under title 42 U.S.C. Section 1986, by refusing to prevent or aid in the prevention of the Civil rights violations perpetrated against plaintiff, which they had the ability to do, and which they knew existed.

284.    Alan Drezin and Richard Pryor aided and abetted plaintiff's Civil rights violations under title 42 U.S.C. Section 1986 because the Statue requires that anyone knowing of Civil rights violations, has a duty to prevent or aid in their prevention under title 42 U.S.C. Section 1986.

285.    Alan Drezin and Richard Pryor were negligent in preventing the conspiracy against plaintiff to continue because the Statue states that, "Every person who, having knowledge

that any of the wrongs conspired to be done, and mentioned in the proceeding Section (42 U.S.C. Section 1985), are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuse to do so, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

## COUNT TWENYY

### (Civil RICO Violations, Title 18 U.S.C. Sections 1961-1965)

**(As to Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor)**

286.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

287.    Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor engaged in a pattern of racketeering activities affecting interstate commerce, as defined in the RICO statues, title 18 U.S.C. Section 1961 (1) (5), and as stated in this complaint. The above named defendants predicate acts consisting of the racketeering activities continued without interruption from May 2007 to 2013 and involved predicate acts by each defendant, affecting interstate commerce, as described in this complaint.

288.    Each defendant named above, directly and indirectly played direct and indirect roles in obstructing justice by preventing plaintiff from reporting the criminal activities detailed in this complaint.

289.    Each defendant named above, is a person within the meaning of title 18 U.S.C. Section 1961(3).

290.    Each defendant named above, by their words and their actions, showed that they had agreed to participate, directly or indirectly, in the affairs of the enterprise through the perpetration of multiple predicate acts.

291.    Each defendant named above, persons within the meaning of RICO, in violation of title 18 U.S.C. Section 1962 (a) and Section 1962 (b), through their predicate racketeering activities, acquired and maintained an interest in the enterprise, continuing their acts in the conspiracy, and furthering the cause of the enterprise. The proceeds of their predicate acts came from void, unlawful and unconstitutional orders rendered in the Kings County Supreme Court and the Federal Bankruptcy Court of the Eastern District of New York. These predicate acts, and the proceeds from them, affected interstate commerce.

292.    Alan Drezin the court appointed receiver of rents and the bankruptcy trustee Robert Pryor, violated title 18 U.S.C. Section 371 by engaging in a conspiracy to join an existing conspiracy and defrauding the State of New York and the United States of America, by converting their Court appointed positions into corrupt enterprises by their actions stated in this complaint.

293.    Under title 18 U.S.C. Section 1964 (c), plaintiff is entitled to sue in any appropriate United States District Court and or State Court and shall recover threefold the damages he sustained and the cost of the suit.

**The receiver of rents and the bankruptcy trustee were part of the enterprise**

294.    Defendants, a RICO enterprise, consisted of a group of individuals who were the process server, the pretender lender and the assignees, the court appointed receiver of rents, and the bankruptcy trustee and other persons not yet known. They acted in concert, misusing in a corrupt manner the office of the Kings County Clerk, the Kings County Supreme Court, and the Bankruptcy Court of the Eastern District of New York, as stated in this complaint. Government offices and courts have been recognized as RICO enterprises.

(See United States v. Thompson, 685 F.2D 993 (6th Cir. 1982), alleging that Governor's office in Tennessee was a Criminal enterprise.) See also United States v. Stratton, 649 F.2d 1066 (1981), alleging that Florida's Third Judicial Circuit met the requisite of a RICO enterprise; United States v. Clark, 646 F.2d 1259 (8th Cir. 1981), holding that a Governmental agency can be a RICO enterprise, and listed several, including examples: the office of County Judge to be an enterprise under the RICO Act and any other Government agencies or offices; United States v. Altomare, 625 F. 2d 5, 7, n.7 (4th Cir.1980, the office of the County Prosecutor, United States v. Grywacz, 603 .2d 682, 686 (7th Cir. 1979), the City Police Department.

## COUNT TWENTY ONE

### (Intentional Violation and Deprivation of Common Law Torts)

### (David Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor)

295.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

296.    David Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor intentionally perpetrated torts and other wrongful acts against plaintiff, and aided and abetted such wrongful acts, knowingly inflicting great harm upon plaintiff.

## COUNT TWENTY TWO

### (Violation of Constitutional Rights and Protection)

### (David Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor)

297.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

298.    David Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor, directly and indirectly, violated plaintiff's rights and protections under the U.S. Constitution, including:

299.    Fifth Amendment right to the protection of property, and protection against being deprived of life, liberty, or property without due process of law. These rights were repeatedly violated as stated in this complaint:

    (a) Judgment entered against plaintiff in the case of MPJM Crush Holdings v. Kenneth Moxey, plaintiff was never served with a summons and a complaint and plaintiff was never served with the order to show cause to appoint a receiver of the rents.

    (b)The sale of plaintiff's property in a non-arms length transaction for $44,000.00 to two entities that weren't the holder and or owner of the mortgage.

(c) Fourteenth Amendment due process and equal protection rights, the violations of which were aided and abetted, by the court appointed receiver of the rents Alan Drezin and the bankruptcy trustee Richard Pryor.

## COUNT TWENTY THREE

### (Fraud Against Plaintiff)

### (As to David Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor)

300.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

301.    David Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor engaged in a pattern of fraud against plaintiff, and entered a conspiracy to do so, which inflicted great and irreparable harm upon plaintiff.

## COUNT TWENTY FOUR

### (Conspiracy)

### (As to all defendants)

302.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

303.    All defendants engaged in a conspiracy against plaintiff, which consisted of criminal acts which caused great and irreparable harm upon plaintiff.

61

304.   MAAAS Enterprises and V-JAMA Holdings engaged in a conspiracy to join an existing conspiracy in violation of title 18 U.S.C. Section 371, when they violated item # 11 of the stipulation and order of the Bankruptcy Court signed by Judge Alan Trust on December 11, 2012, by purchasing the subject property for $44,000.00 from the bankruptcy trustee in a non-arms length transaction without an evidentiary hearing.

"The conspiracy is proven by inference, in accordance with law, by the conduct, statements, documents, and facts and circumstances, and will be determined by a Jury". (United States v. Calaway (9th Cir. 524 F. 2d 609).

## COUNT TWENTY FIVE

### (Intentional infliction of emotional distress)

### (As to Tuthill Finance and MPJM Crush Holdings)

305.   Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

306.   Tuthill Finance and MPJM Crush Holdings intentionally inflicted upon plaintiff emotional distress during the time frame covered by this complaint.

## COUNT TWENTY SIX

### (Negligent Infliction of Emotional Distress)

### (As to Tuthill Finance and MPJM Crush Holdings)

307.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

308.    As a result of the above wrongful acts, plaintiff suffered negligent infliction of emotional distress during the time frame covered by this complaint.

## COUNT TWENTY SEVEN

### (Destruction of Plaintiff's Credit Worthiness)

### (As to Tuthill Finance and MPJM Crush Holdings)

309.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

310.    As a result of Tuthill Finance and MPJM Crush Holdings deliberate wrongful acts, plaintiff suffered a loss of his credit worthiness, which prevented him from obtaining financing and engaging in his real estate business.

## COUNT TWENTY EIGHT

### (Breach of Duty)

### (As to Alan Drezin and Richard Pryor)

311.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

312.    As a proximate result of a breach of duty by Alan Drezin and Richard Pryor, plaintiff suffered damages when a judgment for $957,040.00 was entered against him and Richard

Pryor violated the order of the bankruptcy court and sold the subject property in a non-arm's length transaction for $44,000.00 without an evidentiary hearing as required by the stipulation and order of the Bankruptcy Court.

## COUNT TWENTY NINE

### (Violation of Constitutional Due Process)

### (As to David Betron, Tuthill Finance and MPJM Crush Holdings)

313.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

314.    David Betron, Tuthill Finance and MPJM Crush Holdings knowingly and repeatedly violated plaintiff's right to procedural and substantive due process in the Courts of the State of New York and the United States.

## COUNT THIRTY

### (Vicarious Liability)

### (As to Alan Drezin and Richard Pryor)

315.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

316.    Defendants Alan Drezin, the court appointed receiver of rents and Richard Pryor, the bankruptcy trustee had a responsibility to the State of New York, the United States and to plaintiff to uphold and protect the laws and Constitution of the United States. Instead, they

used their positions and the Courts to violate, to aid and abet the violations and to encourage the violations.

## COUNT THIRTY ONE

### (Omission of a Duty)

### (As to Alan Drezin and Richard Pryor)

317.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

318.    Alan Drezin and Richard Pryor were guilty of malicious omission of a duty to plaintiff, to the Courts, to the State of New York and to the United States. The omission of a duty is, in law, the equivalent of an act, and when harm results, the person or persons refusing to perform a duty is guilty of a wrong and liable to the victim of such wrongdoing. The principle of culpable omissions is no stranger to Federal law. The financial liability for this omission of a duty is found in title 28 U.S.C. Section 1343 and also found in title 42 U.S.C. Section 1986.

319.    The bankruptcy trustee Richard Pryor repeatedly refused to perform a mandatory duty to sell the subject property to MPJM Crush Holdings for $625,000.00 or the highest bidder but instead he aided and abetted the violations through a corrupt misuse of his bankruptcy trustee position and the court, and refused to follow the orders of the bankruptcy judge, thereby obstructing justice. It is a federal offense for any officer or judge to refuse to perform a duty owed to another, and especially in light of the serious issues raised in this complaint. These issues include the repeated pattern of wholesale violations of federally

protected rights, the repeated obstruction of justice, the misuse of the courts and the many other acts and implications stated and obvious in this complaint.

## COUNT THIRTY TWO

## Criminal Acts perpetrated or aided by defendants

## (As to David Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor)

320.    Plaintiff repeats and realleges all preceding paragraphs by reference, as if stated fully in this count.

321.    David Betron, Tuthill Finance, MPJM Crush Holdings, Alan Drezin and Richard Pryor committed criminal acts as described in this complaint, and or aided in the criminal acts, as part of the conspiracy against plaintiff. These acts were crimes under the following Federal criminal Statues:

Title 28 U.S.C. Section 242. Subjecting plaintiff to the deprivation of rights, privileges, and immunities secured under the Constitution and laws of the United States.

Title 18 U.S.C. Section 1510 (preventing reporting of criminal acts).

Title 18 U.S.C. Section 1951(relating to interference with commerce)

Title 18 U.S.C. Section 1952 (relating to racketeering)

Title 18 U.S.C. Section 1341 (relating to mail fraud)

Title 18 U.S.C. Section 1343 (relating to wire fraud)

Title 18 U.S.C. Section371 (engaging in a conspiracy to join an existing conspiracy)

Fraud upon plaintiff, upon the Kings County Supreme Court, fraud upon the Bankruptcy Court of the Eastern District of New York and fraud upon the United States.

## Damages Demanded From Defendants

Wherefore, plaintiff demands judgment against all defendants as follows:

1. Judgment against all defendants as jointly and severally liable for all issues in excess of $2,000,000.00

2. Cost and attorney's fees pursuant to 18 U.S.C. Section 1964 (c) and the relevant New York State Law.

3. Actual and statutory damages for violations of FDCPA pursuant to 15 U.S.C. Section 1692 (k) and relevant New York State Law.

4. Cost and attorney's fees pursuant to 15 U.S.C. Section 1692 (k) and relevant New York State Law.

5. Rescission of the entire mortgage and note amounting to clear title to property with fixtures as a result of the aforementioned, and

6. Damages for the unfair and deceptive acts and practices and

7. Damages in the amount of three times the interest paid and clear title to the property stemming from the exorbitant interest, and

8. Cost of litigation as provided in title 15 United States Code, Section 1601 et. Seq.,

9. Pre-judgment and post judgment interest at the maximum rate allowable by law;

10. Compensatory damages;

11. Punitive damages as allowed by law;

12. Plaintiff demands a jury trial on all claims for which a jury trial is right.

13. Such other relief available under all applicable under State and Federal laws and any

relief the court deems just and appropriate:

Dated: May 3, 2013

Kenneth Moxey

Pro se Plaintiff

923 Custer Street

Valley Stream, NY 11580

516-659-2989

moxeyg@verizon.net

### VERIFICATION

I, Kenneth Moxey, declare that the facts in this complaint are known to me personally, and for

the few that I do not know personally, are stated here on the basis of information and belief.

Executed this 3rd day of May, 2013.

EXHIBIT  A

Case 2:13-cv-04040-JS-WDW   Document 1-1   Filed 07/15/13   Page 70 of 134 PageID #: 70

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2007053100602001001E5551

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 11 |
|---|---|---|
| Document ID: 2007053100602001 | Document Date: 05-25-2007 | Preparation Date: 05-31-2007 |
| Document Type: MORTGAGE | | |
| Document Page Count: 10 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| CIS ABSTRACT | TUTHILL FINANCE |
| AS AGENT FOR COMMONWEALTH | 60 KATONA DR |
| TITLE-PICKUP/RSR | STE 26 |
| 1019 FT SALONGA RD STE 103 | FAIRFIELD, CT 06824 |
| NORTHPORT, NY 11768 | |
| 631-754-8486 | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2395 | 128 | Entire Lot | 245 SOUTH 1ST STREET |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year____ Reel___ Page____ or File Number_____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| KENNETH MOXBY | TUTHILL FINANCE |
| 923 CUSTER STREET | 60 KATONA DR, STE 26 |
| VALLEY STREAM, NY 11580 | FAIRFIELD, CT 06824 |

### FEES AND TAXES

| Mortgage | | | | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 480,000.00 | Filing Fee: | | |
| Taxable Mortgage Amount: | $ | 480,000.00 | | $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | | |
| TAXES: County (Basic): | $ | 2,400.00 | | $ | 0.00 |
| City (Additional): | $ | 5,400.00 | NYS Real Estate Transfer Tax: | | |
| Spec (Additional): | $ | 1,200.00 | | $ | 0.00 |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 1,440.00 | | | |
| NYCTA: | $ | 3,000.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 13,440.00 | | | |
| Recording Fee: | $ | 87.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    06-15-2007 14:07
City Register File No.(CRFN):
2007000310727

*Annette M Hill*

**City Register Official Signature**

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

THIS MORTGAGE, made May 25, 2007
BETWEEN

2395
128
13,440

KENNETH MOXEY , residing at 923 Custer Street, Valley Stream, NY 11580, the Mortgagor and

TUTHILL FINANCE, a Limited Partnership, with offices 60 Katona Drive, Suite 26, Fairfield, Connecticut 06824, the Mortgagee,

WITNESSETH, that to secure the payment of an indebtedness in the sum of FOUR HUNDRED EIGHTY THOUSAND ($480,000.00) AND No/100 ——————————————dollars,

lawful money of the United States, to be paid according to a certain bond, note or obligation bearing even date herewith, the mortgagor hereby mortgages to the mortgagee

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings and City and State of New York and premises commonly known as 245 South 1st Street, Brooklyn, New York 11211 (as more fully bounded and described in Schedule "A" annexed hereto and made a part hereof);

THE MORTGAGE DOES NOT COVER REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGREGATE NOT MORE THAN SIX RESIDENTIAL DWELLING UNITS EACH HAVING THEIR OWN SEPARATE COOKING FACILITIES.

TOGETHER with all right, title and interest of the mortgagor in and to the land lying in the streets and roads in front of and adjoining said premises;

TOGETHER with all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with said premises, including but no limited to furnaces, boilers, oil burners, radiators and piping, coal stokers, plumbing and bathroom fixtures, refrigeration, air conditioning and sprinkler systems, wash-tubs, sinks, gas and electric fixtures, stoves, ranges, awnings, screens, window shades, elevators, motors, dynamos, refrigerators, kitchen cabinets, incinerators, plants and shrubbery and all other equipment and machinery, appliances, fittings, and fixtures of every kind in or used in the operation of the buildings standing on said premises, together with any and all replacements thereof and additions thereto;

TOGETHER with all awards heretofore and hereafter made to the mortgagor for taking by eminent domain the whole or any part of said premises or any easement therein, including any awards for changing of grade of streets, which said awards are hereby assigned to the mortgagee, who is hereby authorized to collect and receive the proceeds of such awards and to give proper receipts and acquittance therefor, and to apply the same toward the payment of the mortgage debt, notwithstanding the fact that the amount owing thereon may not then be due and payable; and the said mortgagor hereby agrees, upon request, to make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning said awards to the mortgagee, free, clear and discharged of any encumbrances of any kind or nature whatsoever.

1-3 Family with store/office.

# EXHIBIT "A"
## (Legal Description)

All that Certain plot, piece, or parcel of Land with the Buildings and Improvements thereon erected, situate, lying and being in the Borough, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the northerly side of South 12st Street, distant 150 feet easterly from the corner formed by the intersection of the northerly side of South 1st Street with the easterly side of Roebling Street;

RUNNING THENCE: northerly parallel with Roebling Street, 77 feet;

THENCE: easterly parallel with South 1st Street, 16 feet 8 inches;

THENCE: southerly parallel with Roebling Street and part of the distance through a party wall, 77 feet to the northerly side of South 1st Street;

THENCE: westerly along the northerly side of South 1st Street, 16 feet 8 inches to the point or place of BEGINNING.

AND the mortgagor covenants with the mortgagee as follows:

1. That the mortgagor will pay the indebtedness as hereinbefore provided.

2. That the mortgagor will keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee; that he will assign and deliver the policies to the mortgagee; and that he will reimburse the mortgagee for any premises paid for insurance made by the mortgagee on the mortgagor's default in so insuring the buildings or in so assigning and delivering the policies.

3. That no building on the premises shall be altered, removed or demolished without the consent of the mortgagee.

4. That the whole of said principal sum and interest shall become due at the option of the mortgagee, after default in the payment of any instalment of principal or of interest for fifteen days; or after default in the payment of any tax, water rate, sewer rent or assessment for thirty days after notice and demand; or after default after notice and demand either in assigning and delivering the policies insuring the buildings against loss by fire or in reimbursing the mortgagee for premiums paid on such insurance, as hereinbefore provided; or after default upon request in furnishing a statement of the amount due on the mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinafter provided. An assessment which has been made payable in installments at the application of the mortgagor or lessee of the premises shall nevertheless, for the purpose of this paragraph, be deemed due and payable in its entirety on the day the first instalment becomes due or payable or a lien.

5. That the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver.

6. That the mortgagor will pay all taxes, assessments, sewer rents or water rates, and in default thereof, the mortgagee may pay the same.

7. That the mortgagor within five days upon request in person or within ten days upon request by mail will furnish a written statement duly acknowledged of the amount due on this mortgage and whether any offsets or defenses exist against the mortgage debt.

8. That notice and demand or request may be in writing and may be served in person or by mail per the notice provisions of the note this mortgage secures.

9. That the mortgagor warrants the title to the premises.

10. That the fire insurance policies required by paragraph No. 2 above shall contain the usual extended coverage endorsement; that in addition thereto the mortgagor, within thirty days after notice and demand, will keep the premises insured against war risk and any other hazard that may reasonably be required by the mortgagee. All of the provisions of paragraphs No. 2 and No. 4 above relating to fire insurance and the provisions of Section 254 of the Real Property Law construing the same shall apply to the additional insurance required by this paragraph.

11. That in case of a foreclosure sale, said premises, or so much thereof as may be affected by this mortgage, may be sold in one parcel.

12. That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action or proceeding the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage (including reasonable counsel fees), shall be paid by the mortgagor, together with interest

thereon at the rate of six percent per annum, and any such sum and the interest thereon shall be a lien on said premises, prior to any right, or title to, interest in or claim upon said premises attaching or accruing subsequent to the lien of this mortgage, and shall be deemed to be secured by this mortgage. In any action or proceeding to foreclose this mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall prevail unaffected by this covenant.

13.  That the mortgagor hereby assigns to the mortgagee the rents, issues and profits of the premises as further security for the payment of said indebtedness, and the mortgagor grants to the mortgagee the right to enter upon and to take possession of the premises for the purpose of collecting the same and to let the premises or any part thereof, and to apply the rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness.  This assignment and grant shall continue in effect until this mortgage is paid.  The mortgagee hereby waives the right to enter upon and to take possession of said premises for the purpose of collecting said rents, issues and profits, and the mortgagor shall be entitled to collect and receive said rents, issues and profits until default under any of the covenants, conditions or agreements contained in the mortgage, and agrees to use such rents, issues and profits in payment of principal and interest becoming due on this mortgage and in payment of taxes, assessments, sewer rents, water rates and carrying charges becoming due against said premises, but such right of the mortgagor may be revoked by the mortgagee upon any default, on five days' written notice.  The mortgagor will not, without the written consent of the mortgagee, receive or collect rent from any tenant of said premises or any part thereof for a period of more than one month in advance, and in the event of any default under this mortgage will pay monthly in advance to the mortgagee, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of said premises or of such part thereof as may be in the possession of the mortgagor, and upon default in any such payment will vacate and surrender the possession of said premises to the mortgagee or to such receiver, and in default thereof may be evicted by summary proceedings.

14.  Following notice and grace period as per note this mortgage secures, that the whole of said principal sum and the interest shall become due at the option of the mortgagee: (a)  After failure to exhibit to the mortgagee, within ten days after demand, receipts showing payment of all taxes, water rates, sewer rents and assessments; or (b) after the actual or threatened alteration, demolition or removal of any building on the premises without the written consent of the mortgagee; or (c) after the assignment of the rents of the premises or any part thereof without the written consent of the mortgagee; or (d) if the buildings on said premises are not maintained in reasonably good repair; or (e) after failure to comply with any requirement or order or notice of violation of law or ordinance issued by any governmental department claiming jurisdiction over the premises within three months from the issuance thereof; or (f) if on application of the mortgagee two or more fire insurance companies lawfully doing business in the State of New York refuse to issue policies insuring the buildings on the premises; or (g) in the event of the removal, demolition or destruction in whole or in part of any of the fixtures, chattels or articles of personal property covered hereby, unless the same are promptly replaced by similar fixtures, chattels and articles of personal property at least equal in quality and condition to those replaced, free from chattel mortgages, or other encumbrances thereon and free from any reservation of title thereto; or (h) after thirty days' notice to the mortgagor, in the event of the passage of any law deducting from the value of land for the purposes of taxation any lien thereon, or changing in any way the taxation of mortgages or debts secured thereby for state or local purposes; or (i) if the mortgagor fails to keep, observe and perform any of the other covenants, conditions or agreements contained in this mortgage.

15.  That the mortgagor will, in compliance with Section 13 of the Lien Law, receive the advances secured hereby and will hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost for the improvement before using any part of the total of the same for any other purpose.

16. The execution of this mortgage has been duly approved by the board of directors of all corporate mortgagors who are parties hereto.

This mortgage may not be changed or terminated orally. The covenants contained in this mortgage shall run with the land and bind the mortgagor, the heirs, personal representatives, successors and assigns of the mortgagor and all subsequent owners, encumbrances, tenants and subtenants of the premises, and shall enure to the benefit of the mortgagee, the personal representatives, successors and assigns of the mortgagee and all subsequent holders of this mortgage. The word "mortgagor" shall be construed as if it read "mortgagors" and the word "mortgagee" shall be construed as if it read "mortgagees" whenever the sense of this mortgage so requires.

IN WITNESS WHEREOF, this mortgage has been duly executed by the mortgagor.

IN PRESENCE OF:

By: _____
    KENNETH MOXEY, Borrower

STATE OF NEW YORK        )
                         ) SS.:
COUNTY OF NASSAU         )

On the 25th day of May, in the year 2007 before me, the undersigned, a Notary public in and for said State, personally appeared Kenneth Moxey, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the persons upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

) SEAL

Official Tax Map Designation

MORTGAGE

Block:    2395
Lot:      128
Borough:  Brooklyn
County:   Kings

Title Company:  CIS Abstract , Inc.
Title Number:   CIS-07-0560

---

KENNETH MOXEY, Mortgagor

to

TUTHILL FINANCE, a Limited Partnership, Mortgagee

---

RETURN BY MAIL TO:

TUTHILL FINANCE
60 KATONA DRIVE, SUITE 26
FAIRFIELD, CT 06824

## RIDER

## TO

## MORTGAGE BETWEEN

## KENNETH MOXEY

## and

## TUTHILL FINANCE, a Limited Partnership, Mortgagee

### Dated: May 25, 2007

17.  In the event the mortgagee of this mortgage shall be required to retain legal counsel for the purpose of commencing foreclosure proceedings hereunder, reasonable attorney's fees shall be added to said indebtedness, and deemed secured hereby in addition to costs, allowances and additional allowances as provided by law.

18. In the event of any default or foreclosure proceeding hereunder the default rate of interest due under this Mortgage shall be two percent (2%) per month which shall accrue through and including the date upon which this Mortgage and the Note which it secures is fully satisfied, or if applicable, the judgment of foreclosure entered thereon is fully satisfied.

19.    In the event the principal sum shall not be paid on the maturity date as provided in the Note which this Mortgage secures, it is expressly understood and agreed that this Mortgage shall bear interest at the default rate of two percent (2%) per month to be due and payable on the 1st day of each month thereafter through and including the date upon which this Mortgage and the Note which is secured by this Mortgage is fully satisfied, or if applicable, the judgment of foreclosure entered thereon is fully satisfied.

20. In the event the premises affected by the within mortgage shall be sold, transferred, leased or conveyed by the mortgagor, then, and in such event, upon such date of sale, transfer or conveyance, the principal sum and accrued interest herein shall become due and payable with the same force and effect as if such date were the maturity date of the within mortgage.

21. Borrower shall have the right to make payments of principle at any time before they are due.  A payment of principal only is known as a "prepayment".  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
I may make a full prepayment or partial prepayment without any prepayment charge. The Note Holder will use prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.  My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.  However, any reduction due to my partial prepayment may be offset by an interest rate increase.

22. This mortgage is given as collateral security for the promissory note made this date by mortgagor to mortgagee in the total sum of $480,000.00. Interest and all terms and conditions of said promissory note are deemed incorporated herein by reference.

23. In the event any of the terms or conditions of the within mortgage or of the obligations secured hereby as represented by a promissory note shall be in conflict or in violation of any laws of the State of New York, the mortgagee or holder hereof shall have the right to make any adjustments as may be necessary to effectuate compliance herewith without in any way affecting the validity of this lien or said obligation secured hereby.

24. At the option of mortgagee, and provided any prior mortgage shall not or shall no longer maintain an escrow account from the mortgagor for the payment of real estate taxes, in addition to monthly payments of interest, mortgagor shall deposit with the mortgagee on the same date that such interest payments are due, a sum equal to one-twelfth (1/12th) of all annual real estate taxes assessed against the premises sufficient to discharge the real estate taxes on the next tax payment date and authority is hereby given to the mortgagee to apply same to the payment of such real estate taxes. If the amount paid by the mortgagor is at any time insufficient to pay the real estate taxes on the next tax due date the mortgagor agrees to pay to the mortgagee immediately said deficiency and if not paid same shall constitute a default under this mortgage. At the further option of the mortgagee the closing of this mortgage mortgagor shall deposit with mortgagee a reserve funding which, when added to the monthly payments for the real estate taxes, will enable the mortgagee to pay the real state taxes upon the applicable due date. In the event mortgagor fails to deposit the amounts required pursuant to the provisions hereof, such failure shall constitute a default under the mortgage and shall render the mortgage in default.

25. The Mortgagor represents and warrants that to its knowledge that neither the Mortgagor nor any present tenant, occupant or operator or the Mortgaged Premises ("Tenant"), any prior owner or Tenant of the Premises (i) used or installed any hazardous materials (whether or not such hazardous materials have been cleaned up and removed from the Mortgaged Premises), on, from, or affecting the Mortgaged Premises or any part thereof, or (ii) received any notice from any federal, state or municipal or local governmental authority or any Tenant or had or has knowledge with regard to hazardous materials on, from or affecting the Mortgaged Premises or any part thereof or of any suit, action, claim or proceeding pending or threatened relating to a violation of or non-compliance with any environmental law. The Mortgagor represents and warrants that the Premises are, and covenants that the Mortgaged Premises shall at all times be kept, free of hazardous materials. The Mortgagor further represents and warrants that to the best of Mortgagor's knowledge the Mortgaged Premises have been, and represents, warrants and covenants that the Mortgaged Premises shall not be used as a landfill or other waste disposal site, or to generate, manufacture, refine, transport, treat, store, handle, dispose, transfer, produce or process hazardous materials, and the Mortgagor shall not cause or permit, as a result of any intentional or unintentional act or omission on the part of the Mortgagor, any Tenant, or any person or entity under Mortgagor's control or which Mortgagor has a contractual relationship, the installation or use of hazardous materials in or on the Mortgaged Premises or any part thereof, a release of hazardous materials onto or from the Mortgaged Premises or any part thereof or suffer the presence of hazardous materials on the Mortgaged Premises. The Mortgagor shall

comply with and ensure compliance by all Tenants, or persons or entities under Mortgagor's control or with which Mortgagor has a contractual relationship with all present and future federal, state and local laws, ordinances, rules and regulations with respect to hazardous materials, and shall keep the entire Mortgaged Premises free and clear of any liens imposed pursuant to such laws, ordinances, rules and regulations. In the event that the Mortgagor receives any notice from any federal, state, municipal or local governmental authority with regard to hazardous materials on, from or affecting the Mortgaged Premises or any part thereof, the Mortgagor shall immediately notify the Mortgagee. The Mortgagor shall immediately and at its sole cost and expense conduct and complete all investigations, studies, sampling and testing, and all remedies, removal, and other actions necessary to clean up and remove all hazardous materials on, from or affecting the Mortgaged Premises or any part thereof in accordance with all present and future applicable federal, state and local laws, ordinances, rules, regulations and policies and to the satisfaction of the Mortgagee.

26. The Mortgagor hereby irrevocably and unconditionally agrees to and does hereby indemnify and hold the Mortgagee and each of them harmless from and against any and all (i) losses, expenses, and liabilities from any breach or default by the Mortgagor of its representations, warranties or other obligations under the within paragraph and (ii) liabilities, losses, claims, damages and costs, including, without limitation, fines, penalties, awards, judgments, settlement amounts, lost profits, and reduction in the amount evidenced or secured by the Mortgage (other than by reason of the repayment of the obligations evidenced by the Mortgage as supplemented hereby), consequential damages, interest, penalties, fines and monetary sanctions and attorneys' and accountants' fees and expenses, fees of experts, court costs and all other out-of-pocket expenses, incurred or suffered by the Mortgagee by reason of, resulting from, in connection with, or in any manner whatsoever arising out of any claim, action, or proceeding with respect to any hazardous materials or any alleged or actual violation of any present or future environmental law and/or wherein the Mortgagee is alleged, adjudicated or determined by a governmental or quasi-governmental body, or in any other action or proceeding involving any nongovernmental claimants, to be or to have been in control of, an owner, occupier, manager, user, or operator of any portion of the Premises, and by virtue of such determination shall be deemed or alleged to be liable for the existence of, or in any way with respect to, any hazardous materials or violation of any present or future environmental law, whether or not the Mortgagee has knowledge of any existence of any hazardous materials at the Mortgaged Premises. "Hazardous Materials" shall include, without limitation, any flammable materials, explosives, radioactive materials, hazardous materials, hazardous wastes, hazardous or toxic substances, or related materials, any substances which are hazardous by virtue of the manner of their use, asbestos or any material containing asbestos, any activity involving any of the foregoing, or any other substance, material or actively defined as hazardous (or toxic or as a "hazardous substance", "pollutant or contaminant", "waste" or "hazardous waste" or "industrial hazardous waste" or any words of similar import or meaning) in words or substance by any present or future applicable federal, state or local environmental or other law, ordinance, rule or regulation, statutory or common law, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended (42 U.S.C. Sections 1801, et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Sections 9601, et seq.) the Superfund Amendments and Reauthorization Act of 1986 (Public Law 99-499, Section 1.01(f) (33), the Hazardous Materials Transportation Act, as

amended (49 U.S.C. Sections 1801, et seq.), the Resource Conservation and Recovery Act, as amended (42 U.S.C. Sections 9601, et seq.) the New York Environmental Conservation Law and in any regulations adopted and publications promulgated pursuant thereto.

27. Mortgagor agrees that in the event that any funds paid by Mortgagor's check at closing for closing expenses including, but not limited to, title charges, mortgage tax and lender's attorneys fees, be returned for insufficient funds same shall be treated as an event of default.

28. With each monthly payment, mortgagor agrees to provide mortgagee with proof that all mortgages prior to this subject mortgage are paid current. Failure to do so shall constitute an act of default.

29. At the option of the Mortgagee and provided a payment under any prior mortgage has been late on at least one occasion, mortgagor shall be obligated hereunder to make payments of all mortgages prior to this mortgage to Mortgagee on or before the first of each month.

30. In the event that a monthly payment due on account of this indebtedness is returned to the mortgagee hereof for insufficient funds or any other such reasons on more than two (2) occasions during the payment period of this loan then the mortgagor hereof shall be required to make all future monthly payments by bank or certified funds. Failure to follow this procedure shall constitute an act of default hereunder.

31. Mortgagee shall be authorized to make payment or payments to any prior mortgagee, lien holder, or for real estate taxes which are unpaid, or for any other expenses necessary to uphold or preserve the status of the within mortgage and it is further agreed by the mortgagor that any said sums paid out for such expenses shall be added to the amount due and owing under this mortgage and shall incur interest at the rate of two (2%) per month from date of disbursement by mortgagee and be computed under this mortgage and deemed secured hereby until this mortgage is paid in full.

32. Following notice and grace period as per note this mortgage secures, in the event of a default, any inspections, of the property deemed necessary by the mortgagee in mortgagee's sole discretion shall be at a cost of $500.00 per inspection and shall be paid by the mortgagor.

33. In the event the mortgagor shall permit the insurance coverage to lapse or in the event a notice of cancellation of insurance is sent to the mortgagee and mortgagee shall reinstate or replace said insurance there shall be a service fee of $150.00 chargeable to the mortgagor.

34. The mortgagor acknowledges that no structure or improvements or excavations to the mortgaged premises may occur without the consent of the mortgagee, which consent shall be not unreasonably withheld. Failure to obtain such consent shall constitute a default under this mortgage in the same manner as a monetary default.

_____
KENNETH MOXEY,   BORROWER

CIS ABSTRACT
1019 Ft. Salonga Rd.
Suite 103
Northport, NY 11768
1 888 TITLENY

O6 - 1142-K

EXHIBIT  B

Page 1 of 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

TUTHILL FINANCE, A LIMITED PARTNERSHIP, HAVING ONE HALF (½) UNDIVIDED INTEREST and PLINY

Petitioner(s)
Plaintiff(s)

SYNDICATION LLC, HAVING A ONE HALF (½) UNDIVIDED INTEREST,
KENNETH MOXEY, et al.

Defendant(s)
Respondent(s)

Attorney: R C D E D
Return Date:
Index No.: 932/09
Assigned Justice:
File #:

WITH INDEX NUMBER AND DATE OF FILING ENDORSED THEREON

STATE OF NEW YORK: COUNTY OF NASSAU ss:
THE UNDERSIGNED DEPONENT BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on FEB. 18, 2009 at 3:10 P.M. at 200-12 LINDEN BLVD. ST. ALBANS, N.Y. 11412

deponent served the within AMENDED SUMMONS and AMENDED VERIFIED COMPLAINT (FILED 2/11/09) on

KENNETH MOXEY                                                    witness/defendant/respondent therein named.

**INDIVIDUAL**
A  ☒ By Personally delivering to and leaving with said individual, and that he knew the person so served to be the person mentioned and described in said writ. (A fee of $_____ pursuant to CPLR Section 8001, was tendered to the witness.)

**CORPORATION**
B  ☐ By delivering to and leaving with _____ and that he knew the person so served to be the Managing Agent of the corporation, and authorized to accept service. (A fee of $_____, pursuant to CPLR Section 8001, was tendered to the witness.)

*Service was made in the following manner after your deponent was unable with due diligence to serve the witness/defendant/in person:*

**SUITABLE AGE PERSON**
C  ☐ By delivering a true copy thereof to and leaving with _____ a person of suitable age and discretion, the said premises being the defendant's/respondents (dwelling place)(usual place of abode)(place of business) within the State of New York (A fee of $_____, pursuant to CPLR Section 8001, was tendered to the witness.)

**AFFIXING TO DOOR, ETC.**
D  ☐ By affixing a true copy thereof to the door of said premises, the same being the defendant's (dwelling place)(usual place of abode)(place of business) within the State of New York (A fee of $_____ pursuant to CPLR Section 8001, was tendered to the witness.)

**MAILING Use with C or D**
E  ☐ On _____, 20___, Deponent completed said service under the last two sections by mailing a copy of the above named process by First Class Mail addressed to the defendant/witness to the above address of service which is defendant's:
☐ Last known residence
☐ Last known place of business (additional endorsement of Personal and Confidential on face of envelope.)
☐ RPAPL 735 An additional mailing by Certified Mail was made to the respondent at the premise sought to be recovered.

**PREVIOUS ATTEMPTS Use with D**
F  ☐ Deponent previously attempted to serve the above named defendant/respondent on the below dates and times

**DRL Sec. 232**
G  ☐ The required notice was legibly printed on the face of the summons. I identified the defendant by a photograph annexed hereto which was provided by the plaintiff.

**VOID WITHOUT DESCRIPTION Use with A, B & C**

A DESCRIPTION OF THE DEFENDANT OR OTHER PERSON SERVED ON BEHALF OF THE DEFENDANT IS AS FOLLOWS:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ Male | ☐ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs | ☐ Under 5' | ☐ Under 100 Lbs |
| ☐ Female | ☒ Black Skin | ☐ Brown Hair | ☒ Balding | ☐ 21-35 Yrs | ☐ 5'0" - 5'3" | ☐ 100 - 130 Lbs |
| | ☐ Yellow Skin | ☐ Blond Hair | | ☒ 36-50 Yrs | ☐ 5'4" - 5'8" | ☐ 131 - 160 Lbs |
| ☐ Glasses | ☐ Brown Skin | ☐ Gray Hair | ☐ Mustache | ☐ 51-65 Yrs | ☒ 5'9" - 6'0" | ☒ 161 - 200 Lbs |
| | ☐ Red Skin | ☐ Red Hair | ☐ Beard | ☐ Over 65 Yrs | ☐ Over 6' | ☐ Over 200 Lbs |

Other Identifying Features: _____

Deponent asked the person spoken to whether the defendant was presently in the military service of the United States Government or on active duty in the military service in the State of New York and was informed he was not. Your deponent further says that he knew the person so served to be the person mentioned and described in said legal papers as defendant/respondent therein. Your deponent is over the age of 18 years and is not a party to this action

Sworn before me the 23 day of FEBRUARY 2009

_Francine Betron_
(Notary Public)

FRANCINE BETRON
Notary Public, State of New York
No. 30-4950028
Qualified in Nassau County
Commission Expires April 24, 20___

_David A. Betron_
PLEASE PRINT NAME BELOW SIGNATURE
DAVID A. BETRON
0795246
License No _____

METRO PROCESS & INVESTIGATIONS, INC. • 531 Redwood Drive, Cedarhurst, N.Y. 11516

Printed: 4/9/2013

932/2009 Affidavit of serv.

Index No. *932*   Year 20*09*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Tuthill Finance, A Limited Partnership, having a one-half (½) undivided interest and
Pliny Syndications, LLC, having a one-half (½) undivided preferred interest,

Plaintiff,

- against -

Kenneth Moxey and "John Doe# 1 through "John Doe # 10", etc.

Defendants.

AMENDED SUMMONS AND AMENDED VERIFIED COMPLAINT

ROBINOWITZ COHLAN DUBOW & DOHERTY LLP
*Attorneys for* Plaintiff

199 MAIN STREET
WHITE PLAINS, NEW YORK 10601
(914) 949-2826
FAX (914) 949-2822

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:* ..................   Signature..............................................................

Print Signer's Name .............................................................

*Service of a copy of the within*                                          *is hereby admitted.*

*Dated:*

.............................................................
*Attorney(s) for*

PLEASE TAKE NOTICE

☐ NOTICE OF ENTRY       *that the within is a (certified) true copy of a
entered in the office of the clerk of the within named Court on*        20

☐ NOTICE OF SETTLEMENT    *that an Order of which the within is a true copy will be presented for settlement to the
Hon.          one of the judges of the within named Court,
at
on*          20     , at          M.

*Dated:*

ROBINOWITZ COHLAN DUBOW & DOHERTY LLP
*Attorneys for*

199 MAIN STREET
WHITE PLAINS, NEW YORK 10601

*To:*

Printed: 4/9/2013

EXHIBIT  C

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through April 19, 2013.

Selected Entity Name: MPJM CRUSH HOLDINGS LLC
Selected Entity Status Information

Current Entity Name:  MPJM CRUSH HOLDINGS LLC
DOS ID #:  3920419
Initial DOS Filing Date: MARCH 05, 2010
County:  KINGS
Jurisdiction:  NEW YORK
Entity Type:  DOMESTIC LIMITED LIABILITY COMPANY
Current Entity Status:  ACTIVE

Selected Entity Address Information
DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)
MPJM CRUSH HOLDINGS LLC
2152 59TH ST
BROOKLYN, NEW YORK, 11204

Registered Agent

NONE

This office does not require or maintain information
regarding the names and addresses of members or
managers of nonprofessional limited liability
companies. Professional limited liability companies
must include the name(s) and address(es) of the original
members, however this information is not recorded and
only available by viewing the certificate.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

**Name History**

| Filing Date | Name Type | Entity Name |
|---|---|---|
| MAR 05, 2010 | Actual | MPJM CRUSH HOLDINGS LLC |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results  New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

# EXHIBIT D



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2007073001272001001ECCB2

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

**Document ID:** 2007073001272001   Document Date: 07-06-2007   Preparation Date: 07-30-2007
**Document Type:** ASSIGNMENT, MORTGAGE
**Document Page Count:** 2

| PRESENTER: | RETURN TO: |
|---|---|
| CIS ABSTRACT PICKUP RSR 06-1162K | SOVEREIGN BANK |
| AS AGENT FOR ORT | 75 STATE STREET |
| 1019 FT SALONGA RD STE 103 | 4TH FLOOR |
| NORTHPORT, NY 11768 | BOSTON, MD 02109 |
| 631-754-8486 | |
| CLOSINGS@TITLENY.COM | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2395 | 128 | Entire Lot | 245 SOUTH 1ST STREET |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

**CROSS REFERENCE DATA**

CRFN: 2007000310727

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| TUTHILL FINANCE | SOVEREIGN BANK |
| 60 KATONA DRIVE, SUITE 26 | 75 STATE STREET, 4TH FLOOR |
| FAIRFIELD, CT 06824 | BOSTON, MA 02109 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 47.00 | |
| Affidavit Fee: | $ | 0.00 | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    08-07-2007 11:40
City Register File No.(CRFN):
**2007000405601**

*Annette M Hill*

**City Register Official Signature**

RECORD AND RETURN TO:
Tuthill Finance
60 Katona Drive, Suite 26
Fairfield, CT 06824

Section:
Block:    2395
Lot:     128

## COLLATERAL ASSIGNMENT OF MORTGAGE AND OTHER DOCUMENTS AS SECURITY FOR EXISTING INDEBTEDNESS AND FUTURE ADVANCES

**TUTHILL FINANCE**, a Limited Partnership having an address at 60 Katona Drive, Fairfield, Connecticut, herein designated "Assignor", acting herein by Jeffrey Wain, President, of WAINCO, INC., the general partner of the Assignor, in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, in hand paid by **SOVEREIGN BANK**, a Massachusetts Banking Corporation, herein designated "Collateral Assignee", having an address of 75 State Street, 4th Floor, Boston, MA 02109 at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, assigned, transferred, set over, and conveyed and by these presents does hereby grant, bargain, sell, assign, transfer, set over and convey unto the Collateral Assignee all of the Assignor's right, title and interest in and to a certain note and mortgage in the original principle amount of **$480,000.00** dated the **25th** day of **May, 2007**, made by **KENNETH MOXEY**, to TUTHILL FINANCE upon the piece or parcel of land more particularly described in said mortgage being in the **County of Kings**, State of **New York**, also known as **245 South 1st Street, Brooklyn, NY 11211.** RECORDED 6/15/07 in CRFN 2007000310127

**TOGETHER** with the note, debt, bond or other obligation described in, or secured by, said mortgage and other documents, and the money or proceeds due and to become due thereon with interest.

**AND**, this Assignment is intended and given as security for any and all loans and advances made by Collateral Assignee prior to, on, or after the date of this Assignment to or for the account of Assignor (and/or any related parties), and any interest, obligations, liabilities, indebtedness, payments, costs, fees, charges and expenses now or hereafter chargeable against Assignor (and/or any related parties) or owing by Assignor (and/or any related parties) to Collateral Assignee (including, but not limited to, the payment and performance of all indebtedness, obligations and liabilities arising under a certain Commercial Revolving Credit Agreement dated September 7th, 2006 between Collateral Assignee, Assignor and People's Bank [ the "Agreement"], a certain Security Agreement dated September 7th, 2006 between Collateral Assignee, Assignor and People's Bank [ the "Security Agreement"], a certain Promissory Note dated September 7th, 2006 in the original principal amount of $20,000,000.00 executed by Assignor in favor of Collateral Assignee, and a certain Promissory Note dated September 7th, 2006 in the original principal amount of $12,000,000.00 executed by Assignor in favor of People's Bank [collectively the "Note"] and any amendments, modifications, extensions or renewals of said Agreement, Security Agreement and/or Note, whether any of the foregoing are direct or indirect, joint or several, primary or secondary, absolute or contingent, due or to become due, guaranteed or secured, now existing or hereafter arising, and no matter how or when arising, including, without limitation, the performance and fulfillment by Assignor (and/or any related parties) of all terms, conditions, promises, covenants and provisions contained in the Agreement, the Security Agreement, the Note or any other present or future loan agreements, security agreements, promissory notes, mortgages, assignments, agreements, documents or instruments of any kind, whatsoever executed or delivered in favor of the Collateral Assignee by Assignor (and/or any related parties) or any obligations or liabilities of any kind whatsoever imposed or binding on the Assignor (and/or any related parties) by operation of law or otherwise. The extent of the encumbrances or indebtedness and the term thereof can be obtained by inquiry of the Collateral Assignee.

**AND**, Collateral Assignee does not by this Assignment or otherwise assume any of the obligations of any kind whatsoever of Assignor or any other party under the assigned mortgage, the assigned note or any other documents, agreements or instruments of any kind whatsoever executed and/or delivered in connection therewith, and Collateral Assignee shall not be responsible in any way whatsoever for the performance by Assignor or any other party of the terms and conditions of the assigned mortgage, the assigned note or any other documents, agreements or instruments of any kind whatsoever executed and/or delivered in connection therewith.

This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary

**AND,** the Assignor hereby makes, constitutes and appoints the Collateral Assignee, the true and lawful attorney of the Assignor, irrevocable, in the Assignor's name or otherwise (as provided in the Agreement and Security Agreement or any related documents or agreements), to have, use and take all lawful ways and means for the recovery of the money, debt and/or other obligations secured and/or described by this Assignment together with interest, and upon payment thereof to discharge the same as fully as the Assignor might or could do if this Assignment has not been made.

**TO HAVE AND TO HOLD** the same unto said Collateral Assignee and its successors and assigns forever.

**THE COLLATERAL ASSIGNEE IS NOT ACTING AS A NOMINEE OF THE MORTGAGOR, AND THE MORTGAGE CONTINUES TO SECURE A BONA FIDE OBLIGATION.**

**IN WITNESS WHEREOF,** the Assignor has duly executed this Assignment this **6th day of July, 2007.**

Signed, Sealed and Delivered in the presence of:

**TUTHILL FINANCE,** a Limited Partnership
By: Wainco, Inc., Its General Partner

By: _____

Jeffrey Wain
President

STATE OF _____

COUNTY OF _____ )ss.: Fairfield

On the 14th day of July, 2007, before me, the undersigned, a Notary Public in and for said State, personally appeared JEFFREY WAIN to me known, who acknowledged that he is the duly authorized President of Wainco, Inc., the General Partner of **TUTHILL FINANCE,** a Limited Partnership, the entity described in and which executed the foregoing instrument and that he, being authorized to do so, signed his name thereto for the purposes therein by and on behalf if said Corporation, as the General Partner of said Partnership, as the free act and deed, and on behalf, of said Partnership for the purposes therein set forth

City of Fairfield                    in        Connecticut
(Insert city or political subdivision)        (Insert State)

Notary Public

**SEAL**

JOETTE HANSEN
NOTARY PUBLIC
MY COMMISSION EXPIRES JAN 31, 20__

D6·1162k
CIS ABSTRACT
1019 Ft. Salonga Rd.
Suite 103
Northport, NY _____

# EXHIBIT E

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2007120400849001001E47CA

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 3 |
|---|---|---|
| Document ID: 2007120400849001 | Document Date: 11-14-2007 | Preparation Date: 12-04-2007 |

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| STATEWIDE ABSTRACT CORP ( PICK-UP BY USTA)<br>CHICAGO TITLE INSURANCE COMPANY<br>202 MAMARONECK AVENUE<br>WHITE PLAINS, NY 10601<br>914-683-5900<br>pcapuano@statewide.com | TUTHILL FINANCE<br>60 KATONA DRIVE<br>FAIRFIELD, CT 06824 |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2395 | 128 | Entire Lot | 245 SOUTH 1ST STREET |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

## CROSS REFERENCE DATA

CRFN: 2007000310727

## PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| SOVEREIGN BANK<br>75 STATE STREET<br>BOSTON, MA 02109 | TUTHILL FINANCE<br>60 KATONA DRIVE<br>FAIRFIELD, CT 06824 |

## FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Filing Fee: | |
| Taxable Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax: | |
| TAXES: County (Basic): | $ | 0.00 | | $ | 0.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | | $ | 0.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 47.00 | |
| Affidavit Fee: | $ | 0.00 | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed     12-11-2007 15:07
City Register File No.(CRFN):
**2007000607328**

*Annette M. Hill*

**City Register Official Signature**

BLOCK 2395
LOT 128
245 SOUTH 1ST STREET ROZ-119

2

## ASSIGNMENT OF MORTGAGE WITHOUT COVENANTS

KNOW ALL MEN BY THESE PRESENTS, that SOVEREIGN BANK, a federal savings bank, having a place of business at 75 State Street, Boston, MA, herein designated "Assignor", in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, in hand paid by TUTHILL FINANCE, a Limited Partnership, having an address at 60 Katona Drive, Fairfield, Connecticut 06824, herein designated "Assignee", at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, assigned, transferred, set over, and conveyed and by these presents does hereby grant, bargain, sell, assign, transfer, set over, and convey unto the Assignee (without any representation or warranty of any kind whatsoever by, or recourse of any kind whatsoever to, Assignor) all of the Assignor's right, title and interest in and to a certain Mortgage dated November 15, 2006, together with any and all documents, agreements and instruments of any kind whatsoever relating thereto, made by Kenneth Moxey to Assignee in the principal sum of $480,000.00 and recorded on June 15, 2007, City Register File No. 2007000310727, with the Office of the City Register of the City of New York and subsequently assigned by Assignee to Assignor by that certain Collateral Assignment of Mortgage and Other Documents as Security for Existing Indebtedness and Future Advances dated July 6, 2007 and recorded with the Office of the City Register of the City of New York, all of which aforesaid instruments affect the real property known as 245 South 1st Street, Brooklyn, NY.

If applicable, this assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment in the secondary mortgage market and/or is for the purpose of releasing a bona fide lien or security interest in the assigned collateral.

The Assignee is not acting as the nominee of the Assignor and the mortgage(s) referred to herein continue to secure a bona fide obligation.

This Assignment is made without recourse to, and without any representation or warranty of any kind whatsoever, either express or implied in fact or by law by, Assignor in any event whatever.

Dated the 14 day of November, 2007.

WITNESSED:                                    SOVEREIGN BANK

_____              By: _____
Name:                                         Name: Joseph A. Anello
                                              Title: Vice President

[TO BE USED ONLY WHEN ACKNOWLEDGED OUTSIDE NEW YORK STATE]

STATE OF MASSACHUSETTS     )
                           ) ss.: _____ 11-14____, 2007
COUNTY OF SUFFOLK          )

On the 14 day of November in the year 2007 before me, the undersigned, personally appeared Joseph A Anello personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her duly authorized capacity as the Vice President of Sovereign Bank, and that by his/her signature on the instrument on behalf of said entity, said entity executed the instrument for the purposes therein stated, and that such individual made such appearance before the undersigned in the Town/City of Boston, County of Suffolk and State of Massachusetts.

_____
(signature and office of individual taking acknowledgment)

Donna Marie Sullivan
12-1-2011

REAL PROPERTIES:                        RECORD AND RETURN TO:
Borough:    Brooklyn
Block:      2395
Lot:        128

people\tuthill\releases\moxey sovereign to tuthill assignment

# EXHIBIT F

Case 2:13-cv-04040-JS-WDW Document 1-1 Filed 07/15/13 Page 96 of 134 PageID #: 105

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008120901168001001E86E0

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 6 |
|---|---|---|
| Document ID: 2008120901168001 | Document Date: 11-25-2008 | Preparation Date: 12-09-2008 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 5 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| LIBERTY TITLE AGENCY LLC-P/U R.BROWN | COHEN & WOLF |
| 515 RECKSON PLAZA | 1115 BROAD STREET |
| LTNY-6440-K-08 | BRIDGEPORT, CT 06604 |
| UNIONDALE, NY 11556 | |
| 516-294-9600 | |
| msarantakos@libertytitle.biz | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2395 | 128 Entire Lot | | 245 SOUTH 1ST STREET |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

**CROSS REFERENCE DATA**

CRFN: 2007000310727

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| TUTHILL FINANCE | PLINY SYNDICATIONS LLC |
| 60 KATONA DRIVE, STE# 26 | ONE THORNDAL CIRCLE, 3RD FL |
| FAIRFIELD, CT 06824 | DARIEN, CT 06820 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 62.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed 12-16-2008 11:40
City Register File No.(CRFN):
2008000477243

*Annette M Hill*

*City Register Official Signature*

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Attn: Mark A. Kirsch, Esq.

_____
Space Above Line For Recorder's Use Only
_____

## PARTIAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS

This PARTIAL ASSIGNMENT OF NOTE, MORTGAGE, AND OTHER LOAN DOCUMENTS (this "Assignment") is made and effective as of November 25th, 2008 by TUTHILL FINANCE, a Connecticut limited partnership, with offices at 60 Katona Drive, Suite 26, Fairfield, CT 06824 ("Assignor"), in favor of PLINY SYNDICATIONS, LLC, a Delaware limited liability company, having a principal place of business at One Thorndal Circle, 3rd Floor, Darien, CT 06820 (in such capacity, "Assignee").

### WITNESSETH:

WHEREAS, Assignor has made a mortgage loan, as more particularly described on Schedule A attached hereto, in the aggregate original principal amount of FOUR HUNDRED EIGHTY THOUSAND DOLLARS ($480,000) (the "Loan") to the borrower identified on Schedule A attached hereto (the "Borrower"); and

WHEREAS, the current aggregate balance of the Loan, including principal, accrued interest and fees, is approximately FOUR HUNDRED EIGHTY THREE THOUSAND AND NO/100 DOLLARS ($483,000); and

WHEREAS, the Loan is evidenced by a promissory note executed by the Borrower as more particularly described on Schedule A attached hereto (the "Note") in the original principal amount of the Loan, and secured by a mortgage (the "Mortgage") on the real property referenced in Schedule A attached hereto and more particularly described on Schedule B attached hereto (the "Premises"); and

WHEREAS, the Note, Mortgage and all other documents, instruments and agreements now or hereafter granting collateral for and/or relating to the Loan, including without limitation any and all assignments of leases and rents and title insurance policies, are hereinafter sometimes singly and collectively called the "Loan Documents"; and

WHEREAS, Assignor wishes to sell and assign, and Assignee wishes to purchase, a Fifty Percent (50%) undivided preferred interest in the Mortgage, the Note, the other Loan Documents and the Premises based upon a negotiated interest rate, a preferred rate of return, an undivided interest in the Premises, and certain other rights and remedies with respect to the Loan, in exchange for TWO HUNDRED FORTY ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($241,500) (the "Investment").

NOW, THEREFORE, in consideration of the Investment and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor does hereby grant, convey, sell, transfer, assign, deliver and set over to Assignor, its successors and assigns, forever, an undivided Fifty Percent(50%) percent interest in and to the Mortgage, the Note, the Premises and together with any and all other Loan Documents evidencing or securing the Loan including, without limitation, all liens, security interests and guarantees. The Mortgage, the Note, and the other Loan Documents shall include, without limitation, all modifications, restructurings, extensions, consolidations, replacements, novations and amendments thereof.

The Assignor represents, covenants, and warrants that there is now owing upon the Note and the Mortgage, without offset or defense of any kind, the sum of $483,000.

The Assignor and Assignee acknowledge and agree that this Assignment is made subject to the terms and conditions of that certain Loan Assignment Agreement, dated as of November 25th, 2008, by and between Assignor and Assignee (the "Loan Assignment Agreement"). In the event of a prepayment or foreclosure of the Note and the Mortgage certain adjustments may be required among the Assignor and the Assignee and the Loan Assignment Agreement shall govern the disposition of any and all proceeds received on account of the Loan.

The Assignor hereby represents and warrants to the Assignee that it is the owner and holder of the Note, the Mortgage, and the other Loan Documents, and has the full right, power, and authority, to assign the same to Assignee.

This Assignment is not subject to section 275 of the real property law as it is an assignment within the secondary mortgage market.

TO HAVE AND TO HOLD the Note, Mortgage, and the other Loan Documents, together with all of the rights and privileges appurtenant thereunto, unto the Assignee, its successors and assigns, forever.

IN WITNESS WHEREOF, Assignor has executed this Partial Assignment of Notes, Mortgages, and other Loan Documents, as of the date first set forth above.

ASSIGNOR:

TUTHILL FINANCE

Witnessed:

By: Wainco, Inc., its General Partner

By: _____
Jeffrey Wain
Its duly authorized President

Mark A. Kirsch

2

STATE OF CONNECTICUT

COUNTY OF FAIRFIELD

On this the 25th day of November, 2008, before me, the undersigned officer, personally appeared Jeffrey Wain who acknowledged himself to be the President of Wainco, Inc., a Connecticut corporation, being the General Partner of Tuthill Finance, a Connecticut limited partnership, signer and sealer of the foregoing instrument, and acknowledged the same to be his free act and deed and the free act and deed of Wainco, Inc., and Tuthill Finance.

Patricia Q Iacozzo
Notary Public
Commissioner of the Superior Court
My Commission Expires: 3/31/2011

SEAL

3

## **SCHEDULE A**

That certain Promissory Note and Mortgage in the original principal amount of Four Hundred Eighty Thousand Dollars ($480,000), dated as of May 25, 2007, made by Kenneth Moxey to Tuthill Finance, upon the piece or parcel of land more particularly described in said Mortgage being commonly known as 245 South 1st Street, Brooklyn, New York 11211, recorded on June 15, 2007 in the office of the City Register of the City of New York as Document ID 2007053100602001 and CRFN# 2007000310727, together with any and all other documents, agreements and instruments of any kind whatsoever relating thereto.

## SCHEDULE B

### 245 South 1st Street, Brooklyn, New York

All that Certain plot, piece, or parcel of Land with the Buildings and Improvements thereon erected, situate, lying and being in the Borough, County of Kings, City and State of New York bounded and described as follows:

BEGINNING at a point on the northerly side of South 1st Street, distant 150 feet easterly from the corner formed by the intersection of the northerly side of South 1st Street with the easterly side of Roebling Street;

RUNNING THENCE: northerly parallel with Roebling Street, 77 feet;

THENCE: easterly parallel with South 1st Street, 16 feet 8 inches;

THENCE: southerly parallel with Roebling Street and part of the distance through a party wall, 77 feet to the northerly side of South 1st Street;

THENCE: westerly along the northerly side of South 1st Street, 16 feet 8 inches to the point or place of BEGINNING.

Borough: Brooklyn
Block: 2395
Lot: 128

5

# EXHIBIT G



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2008122900303001002E912C

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: 2008122900303001 | Document Date: 12-11-2008 | Preparation Date: 01-10-2009 |
| Document Type: ASSIGNMENT, MORTGAGE | | |
| Document Page Count: 2 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| TO BE PICK-UP BY USTA | TO BE PICK-UP BY USTA |
| CHICAGO TITLE INSURANCE COMPANY | CHICAGO TITLE INSURANCE COMPANY |
| 202 MAMARONECK AVENUE | 202 MAMARONECK AVENUE |
| WHITE PLAINS, NY  10601 | WHITE PLAINS, NY  10601 |
| 914-683-5900 | 914-683-5900 |
| pcapuano@statewidea.com | pcapuano@statewidea.com |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2395 | 128 | Entire Lot | 245 SOUTH 1ST  STREET |

Property Type:  1-3 FAMILY WITH STORE / OFFICE

**CROSS REFERENCE DATA**

CRFN: 2007000310727

x  Additional  Cross References on Continuation  Page

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| SOVEREIGN BANK | TUTHILL FINANCE |
| 75 STATE STREET | 60 KATONA DRIVE |
| BOSTON, MA  00000 | FAIRFIELD, CT  06824 |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed        01-13-2009 22:34 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 47.00 | 2009000009473 | |
| Affidavit Fee: | $ | 0.00 | | |

*City Register Official Signature*

Home ABSTRACT Corp.

TITLE NO. STK 21030 (CTSY).

**TUTHILL FINANCE, A LIMITED PARTNERSHIP, HAVING A ONE-HALF (1/2) UNDIVIDED INTEREST AND PLINY SYNDICATIONS, LLC, HAVING A ONE-HALF(1/2) UNDIVIDED PREFERRED INTEREST**

--to--

## MPJM CRUSH HOLDINGS LLC

## ASSIGNMENT OF MORTGAGE

Premises: 245 South 1st Street, Brooklyn, New York 11211
The within premises lie in
Section 8, Block 2395, Lot 128 in Kings County

Record and Return to:

MARIO PRESTIGIACOMO
2152 - 59TH STREET
BROOKLYN, NY 11204

221266_1/02509-002

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2008122900303001002C93AC

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 4 |
|---|---|

Document ID: 2008122900303001    Document Date: 12-11-2008    Preparation Date: 01-10-2009
Document Type: ASSIGNMENT, MORTGAGE

**CROSS REFERENCE DATA**
CRFN: 2007000607328

*R08-176*

## "CORRECTION" ASSIGNMENT OF MORTGAGE WITHOUT COVENANTS

KNOW ALL MEN BY THESE PRESENTS, that SOVEREIGN BANK, a federal savings bank, having a place of business at 75 State Street, Boston, MA, herein designated "Assignor", in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, in hand paid by TUTHILL FINANCE, a Limited Partnership, having an address at 60 Katona Drive, Fairfield, Connecticut 06824, herein designated "Assignee", at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, assigned, transferred, set over, and conveyed and by these presents does hereby grant, bargain, sell, assign, transfer, set over, and convey unto the Assignee (without any representation or warranty of any kind whatsoever by, or recourse of any kind whatsoever to, Assignor) all of the Assignor's right, title and interest in and to a certain Mortgage dated May 25, 2007, together with any and all documents, agreements and instruments of any kind whatsoever relating thereto, made by Kenneth Moxey to Assignee in the principal sum of $480,000.00 and recorded on June 15, 2007, City Register File No. 2007000310727, with the Office of the City Register of the City of New York and subsequently assigned by Assignee to Assignor by that certain Collateral Assignment of Mortgage and Other Documents as Security for Existing Indebtedness and Future Advances dated July 6, 2007 and recorded on August 7, 2007, City Register File No. 2007000405601, with the Office of the City Register of the City of New York, all of which aforesaid instruments affect the real property known as 245 South 1st Street, Brooklyn, NY. *BLOCK 2395 LOT 128*

If applicable, this assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment in the secondary mortgage market and/or is for the purpose of releasing a bona fide lien or security interest in the assigned collateral.

The Assignee is not acting as the nominee of the Assignor and the mortgage(s) referred to herein continue to secure a bona fide obligation. *of section 275 of the real property law because*
*This assignment is not subject to the requirements*
*it is an assignment which in the secondary mortgage market.*
This Assignment is made without recourse to, and without any representation or warranty of any kind whatsoever, either express or implied in fact or by law by, Assignor in any event whatever.

Dated the _11th_ day of _December_, 2008

WITNESSED:

Name: PIERRE A. DESBIENS

SOVEREIGN BANK

By: _____
Name: _Joseph A. Anelli_
Title: _Vice President_

THIS CORRECTION ASSIGNMENT IS BEING RECORDED TO CORRECT THE ORIGINAL MORTGAGE DATE*WHICH WAS INCORRECTLY STATED WHEN ORIGINALLY RECORDED ON DECEMBER 11, 2007 IN CRFN 2007000607328 TO READ "MAY 25, 2007" AND NOT "NOVEMBER 15, 2006".

*on the assignment of mortgage*

**[TO BE USED ONLY WHEN ACKNOWLEDGED OUTSIDE NEW YORK STATE]**

STATE OF MASSACHUSETTS    )

                                   ) ss: *Suffolk*     *December 11,* 2007

COUNTY OF SUFFOLK         )

        On the *11th* day of *December* in the year ~~2007~~ *2009* before me, the undersigned, personally appeared *Joseph A. Anelo* personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her duly authorized capacity as the *Vice President* of Sovereign Bank, and that by his/her signature on the instrument on behalf of said entity, said entity executed the instrument for the purposes therein stated, and that such individual made such appearance before the undersigned in the Town/City of *Boston*, County of Suffolk and State of Massachusetts.

Stephen Donald Jussaume
Notary Public
My Commission Expires August 24, 2012
Commonwealth of Massachusetts

(signature and office of individual taking acknowledgment)

**SEAL**

REAL PROPERTIES:

Borough:    Brooklyn

Block:      2395

Lot:        128

RECORD AND RETURN TO:

people\tuthill\releases\2moxey sovereign to tuthill assignment

# EXHIBIT H



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2010003230007700100 1E0935

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 7 |
|---|---|

| Document ID: 2010032300077001 | Document Date: 03-17-2010 | Preparation Date: 03-23-2010 |
|---|---|---|

Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 5

| PRESENTER: | RETURN TO: |
|---|---|
| HOME ABSTRACT CORP./STK21030(CTSY) | MARIO PRESTIGIACOMO (PICK UP REJECTIONS) |
| AS AGENT FOR STEWART TITLE INSURANCE CO. | 2152 59TH STREET |
| 8225 THIRD AVENUE | BROOKLYN, NY 11204 |
| BROOKLYN, NY 11209 | |
| 718-680-4663 | |
| info@homeabstractcorp.com | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2395 | 128 | Entire Lot | 245 SOUTH 1ST STREET |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN: 2007000310727

### PARTIES

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| TUTHILL FINANCE | MPJM CRUSH HOLDINGS LLC |
| 60 KATONA DRIVE, SUITE 26 | 2152 59TH STREET |
| FAIRFIELD, CT 06824 | BROOKLYN, NY 11204 |

x  Additional Parties Listed on Continuation Page

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| TASF: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| MTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| NYCTA: | $ | 0.00 | Recorded/Filed    04-01-2010 14:44 | | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | | |
| TOTAL: | $ | 0.00 | 2010000109954 | | |
| Recording Fee: | $ | 62.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

*Annette M. Hill*

**City Register Official Signature**

Case 2:13-cv-04040-JS-WDW    Document 1-1    Filed 07/15/13    Page 110 of 134 PageID #: 119



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2010032300077001001C0BB5

| **RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION)** | **PAGE 2 OF 7** |
|---|---|

Document ID: 2010032300077001     Document Date: 03-17-2010     Preparation Date: 03-23-2010
Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**
**ASSIGNOR/OLD LENDER:**
PLINY SYNDICATIONS, LLC
C/O OLD HILL PARTNERS, INC., 1120 BOSTON POST
ROAD, 2ND FLOOR
DARIEN, CT 06820

## ASSIGNMENT OF MORTGAGE

KNOW THAT, **Tuthill Finance, a Limited Partnership, having a one-half (1/2) undivided interest**, having a principal address of 60 Katona Drive, Suite 26, Fairfield, CT 06824 **and Pliny Syndications, LLC, having a one-half (1/2) undivided preferred interest, a** Delaware limited liability corporation, having a principal address of c/o Old Hill Partners Inc., 1120 Boston Post Road, 2nd Floor, Darien, CT 06820 (the "Assignor"), in consideration of Ten and 00/100 ($10.00) Dollars paid by **MPJM Crush Holdings LLC**, a New York limited liability company, having a principal address of 2152-59 Street, Brooklyn, NY 11204 (the "Assignee"), hereby assigns unto the Assignee all of its right, title and interest in and to:

### SEE MORTGAGE SCHEDULE ANNEXED HERETO AND MADE A PART HEREOF

covering premises known as 245 South 1st Street, Brooklyn, New York 11211, and more particularly described by Schedule A annexed hereto

**TOGETHER** with the bonds or notes or obligations described in said mortgage and the moneys due and to grow due thereon with the interest; **TO HAVE AND TO HOLD** the same unto the Assignee and its successors and assigns forever.

Assignor represents and warrants to Assignee that Assignor owns the foregoing mortgage and has the right to assign the same and that there is now owing upon said mortgage, without offset or defense of any kind, the principal sum of $375,000.00 and interest thereon as provided in the note secured thereby.

The Assignee is not acting as a nominee of the mortgagor and the mortgage continues to secure a bona fide obligation.

This Assignment is not subject to the requirements of Section 275 of The Real Property Law because it is the refinancing of an existing loan with a new lender.

**IN WITNESS WHEREOF**, the Assignor has duly executed this Assignment this 17th day of March, 2010.

TUTHILL FINANCE, A LIMITED LIABILITY COMPANY

By:_____
Name: Jeffrey Wain
Title: President of Wainco Inc., the General Partner of Tuthill Finance

PLINY SYNDICATIONS, LLC

By:_____
Name: Mark J. Warnken
Title: Manager

221266_1/02509-002

**STATE OF CONNECTICUT**      )ss. fairfield

**COUNTY OF FAIRFIELD**       )

On the 17th day of March in the year 2010, before me, the undersigned, a Notary Public in and for said State, personally appeared JEFFREY WAIN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

City of fairfield    in    Connecticut
(Insert city or political subdivision)    (Insert State)
State

JOETTE HANSEN
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JAN. 31, 2011

**STATE OF CONNECTICUT**    )

**COUNTY OF** Fairfield    )ss. Darien

SEAL

On the 17 day of March in the year 2010, before me, the undersigned, a Notary Public in and for said State, personally appeared MARK J. WARNKEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

Darien    in    CT
(Insert city or political subdivision)    (Insert State)

SEAL

AMANDA M. DUARTE
NOTARY PUBLIC
STATE OF CONNECTICUT
My Commission Expires
September 30, 2013

221266_1/02509-002

## SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of South 1st Street, distant 150 feet easterly from the corner formed by the intersection of the northerly side of South 1st Street with the easterly side of Roebling Street;

THENCE northerly parallel with Roebling Street, 77 feet;

THENCE easterly parallel with South 1st Street, 16 feet 8 inches;

THENCE southerly parallel with Roebling Street and part of the distance through a party wall, 77 feet to the northerly side of South 1st Street;

THENCE westerly along the northerly side of South 1st Street, 16 feet 8 inches to the point or place of BEGINNING.

221266_1/02509-002

## MORTGAGE SCHEDULE

**MORTGAGE** made by KENNETH MOXEY  - to – TUTHILL FINANCE, A LIMITED PARTNERSHIP dated 5/25/07 and recorded 6/15/07 in CRFN 2007000310727 to secure the sum of $480,000.00 and interest.   Mortgage assigned to Sovereign Bank dated 7/6/07 and recorded on 8/7/07 in CRFN 2007000405601.  Mortgage assigned to Tuthill Finance, a Limited Partnership dated 11/14/07 and recorded on 12/11/07 in CRFN 2007000607328.  Correction Assignment dated 12/11/08 correcting original mortgage date and recorded on 1/13/09 in CRFN 2009000009473.  On 11/25/08 Tuthill Finance, a Limited Partnership assigned fifty percent (50%) undivided preferred interest in the Mortgage to Pliny Syndications, LLC by a partial assignment of Note, Mortgage and other loan documents which was recorded on 12/16/08 in CRFN 2008000477243.

221266_1/02509-002

# EXHIBIT I

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2013011000298001002E22EC

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 5 |
|---|---|---|
| Document ID: 2013011000298001 | Document Date: 01-09-2013 | Preparation Date: 01-30-2013 |
| Document Type: DEED | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| HOME ABSTRACT CORP, AS AGENT (P/U REJECTIONS)<br>8225 THIRD AVENUE<br>HAR 974<br>BROOKLYN, NY 11209<br>718-680-4663 | V-JAMA HOLDINGS<br>224 93RD STREET<br>BROOKLYN, NY 11209 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 2395 | 128 | Entire Lot | 245 SOUTH 1ST STREET |
| Property Type: 1-3 FAMILY WITH STORE / OFFICE | | | | |

### CROSS REFERENCE DATA

CRFN _____ or Document ID _____ or _____ Year ____ Reel ____ Page ____ or File Number _____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| ROBERT PRYOR, ESQ.<br>C/O MICHAEL FARINA, ESQ, 675 OLD COUNTRY ROAD<br>WESTBURY, NY 11590 | V-JAMA HOLDINGS LLC<br>31 DOUGLAS STREET<br>BROOKLYN, NY 11231 |
| x  Additional Parties Listed on Continuation Page | |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 250.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 627.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 52.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed     02-21-2013 15:15
City Register File No.(CRFN):
**2013000074430**

*Annette M Hill*

*City Register Official Signature*

NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER



2013011000298001002C206C

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 5 |
|---|---|---|
| Document ID: 2013011000298001 | Document Date: 01-09-2013 | Preparation Date: 01-30-2013 |
| Document Type: DEED | | |

**PARTIES**
**GRANTEE/BUYER:**
MAAAS ENTERPRISES, LP
8 DOUGLAS DRIVE
HOLMDEL, NJ 07733

# TRUSTEE'S QUITCLAIM DEED

**THIS DEED**, made on this 9th day of January, 2013 , by and between Robert L. Pryor, Esq. ("Grantor"), Chapter 7 Trustee of the Bankruptcy Estate (the "Estate") of Kenneth G. Moxey ("Debtor"), 675 Old Country Road, Westbury, New York 11590-4513, Maaas Enterprises, LP a Delaware Limited Partnership located at 8 Douglas Drive, Holmdel, NJ 07783 and V-Jama Holdings, LLC, a New York Limited Company, located at 224 93rd Street, Brooklyn, NY 11209 as (Grantees).

**WITNESSETH**, that Grantor is the Bankruptcy Trustee appointed in a case pending before the United States Bankruptcy Court for the Eastern District of New York, Case No. **8-12-74340-ast**, for the purpose of liquidating assets of the Estate, pursuant to the applicable provisions of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as amended (the "Bankruptcy Code"), and pursuant to a Stipulation and Order of the United States Bankruptcy Court, dated December 11, 2012, in consideration of $44,000.00 (Forty Four Thousand Dollars), lawful money of the United States, paid by the Grantees, does hereby remise, release and quitclaim unto the Grantees, their heirs, successors and assigns, without representation of any kind whatsoever, all of Trustee's right, title, and interest in and to the premises, described in **Schedule "A"** hereto, commonly known as the real property located at 245 South 1st Street, Brooklyn, NY 11211 (the "Premises") and rents collected by the Receiver thereon as is, where is, with all faults, **subject to:** (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions, and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) subject to any tenancies; and (f) with no warranties express, actual or implied whatsoever.

**IN WITNESS THEREOF**, Grantor has hereunto set his hand and seal, the date first above written.

_____
ROBERT L. PRYOR, TRUSTEE

STATE OF NEW YORK )
                  )ss.:
COUNTY OF NASSAU )

On the 9th day of January in the year 2013, before me, the undersigned, a notary public in and for said state, personally appeared Robert L. Pryor, Esq., Chapter 7 Trustee fo the Bankruptcy Estate of Kenneth G. Moxey, Debtor, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

**MICHAEL FARINA**
Notary Public, State of New York
No. 4991473
Qualified in Queens County
Commission Expires February 9, 20 14

_____
NOTARY PUBLIC **SEAL**

1

I:\Moxey\Sale\Quitclaimdeed.wpd

<u>**SCHEDULE "A"**</u>

**ALL** that certain plot, piece, or parcel of Land with the Buildings and Improvements thereon erected, situate, lying and being in the Borough, County of Kings, City and State of New York bounded and described as follows:

**BEGINNING** at a point on the northerly side of South 1st Street, distant 150 feet easterly from the corner formed by the intersection of the northerly side of South 1st Street with the easterly side of Roebling Street;

**RUNNING THENCE:** northerly parallel with Roebling Street, 77 feet;

**THENCE:** easterly parallel with South 1st Street, 16 feet 8 inches;

**THENCE:** southerly parallel with Roebling Street and part of the distance through a party wall, 77 feet to the northerly side of South 1st Street;

**THENCE:** westerly along the northerly side of South 1st Street, 16 feet 8 inches to the point of place of **BEGINNING**.

**FOR INFORMATION ONLY:**

BOROUGH: BROOKLYN  BLOCK 2395  LOT(S) 128

2

I:\Moxey\Sale\Quitclaimdeed.wpd

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

In re:

KENNETH G. MOXEY,                         Chapter 7
                                          Case No.: 8-12-74340-AST
                    Debtor.

---

## TRUSTEE'S QUITCLAIM DEED

### PRYOR & MANDELUP, L.L.P.

Attorneys for:    Robert L. Pryor, Trustee.

Office and Post Office Address, Telephone
675 Old Country Road
Westbury, New York 11590
(516) 997-0999

---

To

Attorney(s) for

---

Service of a copy of the within

                              is hereby admitted

Dated

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Attorney(s) for



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2013011000298001002SEC6D

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

Document ID: 2013011000298001    Document Date: 01-09-2013    Preparation Date: 01-30-2013
Document Type: DEED

ASSOCIATED TAX FORM ID: 2013010800084

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| DEP CUSTOMER REGISTRATION FORM FOR WATER AND SEWER BILLING | 1 |
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |
| SMOKE DETECTOR AFFIDAVIT | 3 |

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**

**FOR CITY USE ONLY**

| C1. County Code | C2. Date Deed Recorded | Month | Day | Year |
|---|---|---|---|---|

C3. Book
OR
C5. CRFN | C4. Page

**PROPERTY INFORMATION**

**1. Property Location**
| 245 | SOUTH 1ST STREET | BROOKLYN | 11211 |
| STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE |

**2. Buyer Name**
| V-JAMA HOLDINGS LLC | |
| LAST NAME / COMPANY | FIRST NAME |
| MAAAS ENTERPRISES, LP | |
| LAST NAME / COMPANY | FIRST NAME |

**3. Tax Billing Address**
Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)

| | |
| LAST NAME / COMPANY | FIRST NAME |
| | |
| STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE |

**4. Indicate the number of Assessment Roll parcels transferred on the deed** | 1 | # of Parcels OR | Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
6. Ownership Type is Condominium
7. New Construction on Vacant Land

**5. Deed Property Size**
| | X | | OR | |
| FRONT FEET | DEPTH | | ACRES |

**8. Seller Name**
| ROBERT PRYOR, ESQ | |
| LAST NAME / COMPANY | FIRST NAME |
| | |
| LAST NAME / COMPANY | FIRST NAME |

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A | One Family Residential | C | Residential Vacant Land | E ✓ | Commercial | G | Entertainment / Amusement | I | Industrial |
| B | 2 or 3 Family Residential | D | Non-Residential Vacant Land | F | Apartment | H | Community Service | J | Public Service |

**SALE INFORMATION**

**10. Sale Contract Date** | 10 / 15 / 2012 |
| Month Day Year |

**11. Date of Sale / Transfer** | 1 / 9 / 2013 |
| Month Day Year |

**12. Full Sale Price** $ | 4,4,0,0,0 |

( Full Sale Price is the total amount paid for the property including personal property.
This payment may be in the form of cash, other property or goods, or the assumption of
mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| A | Sale Between Relatives or Former Relatives |
| B | Sale Between Related Companies or Partners in Business |
| C | One of the Buyers is also a Seller |
| D | Buyer or Seller is Government Agency or Lending Institution |
| E | Deed Type not Warranty or Bargain and Sale ( Specify Below ) |
| F | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | Significant Change in Property Between Taxable Status and Sale Dates |
| H | Sale of Business is Included in Sale Price |
| I | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J ✓ | None |

**ASSESSMENT INFORMATION** - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class** | S 1 |    **16. Total Assessed Value (of all parcels in transfer)** | 1,5,2,0,6 |

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional identifier(s) )

| BROOKLYN 2395  128 | |

201301080008420102

**FOR CITY USE ONLY**

| C1. County Code | C2. Date Deed Recorded | | | **REAL PROPERTY TRANSFER REPORT** |
|---|---|---|---|---|
| C3. Book OR | CITY REGISTER | | | **STATE OF NEW YORK** |
| C5. CRFN | C4. Page | | | **STATE BOARD OF REAL PROPERTY SERVICES** |
| | JAN 11 2012 | | | **RP - 5217NYC** |

## PROPERTY INFORMATION

**1. Property Location**
245 | SOUTH 1ST STREET | BROOKLYN | 11211
STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE

**2. Buyer Name**
V-JAMA HOLDINGS LLC
LAST NAME / COMPANY | FIRST NAME

MAAAS ENTERPRISES, LP
LAST NAME / COMPANY | FIRST NAME

**3. Tax Billing Address**  Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY | FIRST NAME

STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**  1  # of Parcels OR ☐ Part of a Parcel

**4A. Planning Board Approval - N/A for NYC**
**4B. Agricultural District Notice - N/A for NYC**

Check the boxes below as they apply:
**6. Ownership Type is Condominium** ☐
**7. New Construction on Vacant Land** ☐

**5. Deed Property Size**
____ X ____ OR ____
FRONT FEET | DEPTH | ACRES

**6. Seller Name**
ROBERT PRYOR, TRUSTEE
LAST NAME / COMPANY | FIRST NAME

LAST NAME / COMPANY | FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A ☐ One Family Residential | C ☐ Residential Vacant Land | E ☑ Commercial | G ☐ Entertainment / Amusement | I ☐ Industrial |
|---|---|---|---|---|
| B ☐ 2 or 3 Family Residential | D ☐ Non-Residential Vacant Land | F ☐ Apartment | H ☐ Community Service | J ☐ Public Service |

## SALE INFORMATION

**10. Sale Contract Date**  10 / 15 / 2012
Month / Day / Year

**11. Date of Sale / Transfer**  1 / 9 / 2013
Month / Day / Year

**12. Full Sale Price** $  44 0 0 0
( Full Sale Price is the total amount paid for the property including personal property.
This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| A ☐ | Sale Between Relatives or Former Relatives |
|---|---|
| B ☐ | Sale Between Related Companies or Partners in Business |
| C ☐ | One of the Buyers is also a Seller |
| D ☐ | Buyer or Seller is Government Agency or Lending Institution |
| E ☐ | Deed Type not Warranty or Bargain and Sale (Specify Below) |
| F ☐ | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G ☐ | Significant Change in Property Between Taxable Status and Sale Dates |
| H ☐ | Sale of Business is Included in Sale Price |
| I ☐ | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J ☑ | None |

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class**  S 1

**16. Total Assessed Value (of all parcels in transfer)**  1 5 2 0 6

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional identifier(s) )

BROOKLYN 2395  128

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |
|---|---|

| BUYER | 01/09/13 | Weiner | BUYER'S ATTORNEY | Bruce |
|---|---|---|---|---|
| BUYER SIGNATURE | DATE | LAST NAME | | FIRST NAME |

**31 DOUGLAS STREET**

| | 718 | 855 | 6840 |
|---|---|---|---|
| STREET NUMBER    STREET NAME (AFTER SALE) | AREA CODE | TELEPHONE NUMBER | |

**BROOKLYN**

| | NY | 11231 | | SELLER |
|---|---|---|---|---|
| CITY OR TOWN | STATE | ZIP CODE | SELLER SIGNATURE | 01  09  13 |
| | | | | DATE |

2013010800084201

Form RP-5217 NYC

ATTACHMENT

# CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYERS**

Buyer Signature _____  Date 01/09/13

Buyer Signature _____  Date 07/09/13

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

Buyer Signature _____  Date _____

**SELLERS**

Seller Signature _____  Date 01/09/13

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

Seller Signature _____  Date _____

2013010800084201

Affidavit of Compliance with Smoke Detector Requirement for One and-Two Family Dwellings

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York        )
                         ) SS.:
County of  N̄assau       )

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

245  SOUTH 1ST  STREET
_____                                    Unit/Apt.
Street Address

BROOKLYN          New York,      2395        128     (the "Premises");
Borough                          Block       Lot

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

Robet L. Pryor, Ch.7 Trust    Giuseppe Mannino
Name of Grantor (Type or Print)      Name of Grantee (Type or Print)

_____        _____
Signature of Grantor              Signature of Grantee

SEAL                              SEAL

Sworn to before me              Sworn to before me
this ___ date of  January       this ___ date of  Ja
20 13                           20 13

MICHAEL FARINA                  MICHAEL FARINA
Notary Public, State of New York  Notary Public, State of New York
No. 4991473                     No. 4991473
Qualified in Queens County       Qualified in Queens County
Commission Expires February 3, 20 14  Commission Expires February 3, 20 14

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

1

2013010800084101

# EXHIBIT J

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re

KENNETH G. MOXEY,                                   Case No.: 12-74340-ast
                                                    Chapter 7

                                Debtor.
-------------------------------------------------------X

## STIPULATION AND ORDER

**IT IS HEREBY STIPULATED AND AGREED,** by and between the

undersigned attorneys for Robert L. Pryor, Chapter 7 Trustee (the "Trustee") of the Bankruptcy

Kenneth G. Moxey (the "Debtor"), and MPJM Crush Holdings, LLC ("MPJM") as follows:

WHEREAS, on July 12th, 2012 (the "Filing Date"), the Debtor filed a voluntary

petition for relief from his creditors under Chapter 7 of the Bankruptcy Reform Act of 1978, as

amended (the "Bankruptcy Code"); and

WHEREAS, the first meeting of creditors, in accordance with Section 341(a) of

the Bankruptcy Code, was held on August 16, 2012, at which time Robert L. Pryor qualified

as permanent Trustee; and

WHEREAS, according to Schedule "A" of the Debtor's petition and schedules,

the Debtor is the owner in fee simple of real property located at 245 South First Street,

Brooklyn, NY 11211 (the "Brooklyn Property"); and

WHEREAS, the Debtor's Petition and Schedules set forth that at the time of the

filing, the following liens and encumbrances existed as against the Brooklyn Property, and in the

following amounts, to wit:

| | | | |
|---|---|---|---|
| A. | MPJM | First Mortgage | $378,500.00 |
| B. | Tuthill Finance | Second Mortgage | $378,500.00; |

and

WHEREAS, by Assignment of Mortgage dated March 17, 2010, Tuthill Finance assigned its note and mortgage to MPJM, thereby creating a first mortgage lien in favor of MPJM against the Brooklyn Property; and

WHEREAS, upon information and belief, MPJM obtained a judgment of foreclosure and sale against the Brooklyn Property on June 18, 2012 in the sum of $757,811.78, plus interest accruing thereon from October 30, 2010 at the rate of $320.82 per day in the sum of $199,229.00, for the total amount of $957,040.21 owed to MPJM on its judgment of foreclosure as of the Filing Date ; and

WHEREAS, as the Debtor had been using the Brooklyn Property as a rental property, a receiver (the "Receiver") had been appointed during the foreclosure proceeding against the premises; and

WHEREAS, upon information and belief, as of this date the Receiver has collected rental income (the "Rents") for which the Receiver must account; and

WHEREAS, the Trustee has entered into negotiations with MPJM , the First Mortgagee, which has expressed an interest in purchasing the Trustee's right, title and interest in and to the Brooklyn Property and the Rents on hand held by the Receiver; and

WHEREAS, MPJM , consents to the liquidation by the Trustee of the Brooklyn Property and the Rents so as to expedite the process of realizing available value; and

WHEREAS, the Petition and Schedules set forth that the fair market value of the Brooklyn Property is equal to or about $600,000.00; and

WHEREAS, as part of its offer, MPJM has agreed to carve out from its lien for the benefit of the bankruptcy estate, (i.e. Chapter 7 Trustee's commissions under 11 U.S.C. §326,

fees and expenses to Pryor & Mandelup, LLP, as Counsel to the Chapter 7 Trustee and

unsecured claims), funds in an amount as set forth hereunder.

## NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED

## AS FOLLOWS:

1.      The foregoing recitals are hereby incorporated by reference herein.

2.      MPJM represents that it is authorized to enter into this Stipulation on its

behalf.

3.      The Trustee acknowledges that MPJM holds a valid first note and

mortgage against the Brooklyn Property with a balance due as of the Filing Date on its judgment

of foreclosure and sale entered on June 18, 2012 in the sum of $957,040.00.

4.      MPJM  hereby offers as an initial stalking horse offer  the sum of

$600,000.00 (the "Offer") to purchase the Estate's right, title and interest in and to : (a) the

Brooklyn Property and (b) the amounts held by the Receiver *  for the Rents collected by him

for a total offer of $625,000.00.

* Estimated to be approximately $25,000.00.

5.      Contemporaneously with the execution of this Stipulation, MPJM shall

deliver  the sum of $10,000.00  (the "$10,000.00 Initial Deposit") made payable to "Robert L.

Pryor, Trustee"), which shall be held in escrow to be utilized toward the purchase price to the

extent that MPJM is the highest and best offeror.

6.      MPJM is authorized to credit bid under 11  U.S.C. §363(k) the amount of

its First Mortgage  (which as of the Filing Date totaled $957,040.00) towards the purchase price

for the Trustee's right, title and interest in and to the Brooklyn Property and the Rents collected

by the Receiver.

7.    Pursuant to 11 U.S.C. §506(c), in the event that MPJM is the successful offeror, at Closing, it will make available sufficient cash funds to pay the following:

a.    First, to pay all reasonable and necessary closing costs and closing adjustments incurred in connection with the sale of the Brooklyn Property, including but not limited to recordation fees, title insurance charges, any and all real property transfer taxes (to the extent required), pick up fees, pick up fees, New York Real Property Transfer Tax, New York City Real Property Transfer Tax and outstanding real estate taxes (to the extent required).

b.    A total of $44,000.00, which represents:

(i)    agreed reduced Trustee's commissions in the amount of sixteen ($16,000.00) thousand dollars, measured by one-half (½) of amounts allowable pursuant to 11 U.S.C. §326 computed against MPJM's total offer received on account of the sale of the Brooklyn Property and the Rent;

(ii)    legal fees to Pryor & Mandelup, L.L.P., as counsel to the Trustee, not to exceed $10,000.00; along with reimbursement of costs and disbursements; and

(iii)    $18,000.00 for the benefit of unsecured creditors.

8.    In the event that timely filed general unsecured claims referred to in ¶7(b)(iii) supra total less than $18,000.00, the Trustee shall refund to MPJM the difference between the sum of $18,000.00 and the aggregate amount of timely filed general unsecured claims.

9.    In the event there is a higher or better offer, either by MPJM or a third party that is accepted by the Trustee, the Trustee shall be entitled to full commissions and such legal fees that may be awarded by the Bankruptcy Court. Nothing contained herein shall otherwise affect the Trustee's right to compensation under applicable bankruptcy law in accordance with 11 U.S.C. §326, 330 and 331 as against any other assets recovered by the Trustee which constitute property of this Bankruptcy Estate.

10.   The sale of the estate's interest in the Brooklyn Property and the Rents is being offered "as is" "where is" without warranties, covenants guaranties or representations of any kind or description "subject to " all claims, liens and encumbrances pursuant to 11 U.S.C. §363, Bankruptcy Rule 6004 and Local Bankruptcy Rule EDNY LBR 6004-1(b).

11.   MPJM's offer is also being accepted "subject to" higher or better offers which may be procured from creditors and entities who will be served with notice of the Application to approve this Stipulation pursuant to Bankruptcy Rules 2002(a)(2) and 6004. In the event a competing offer is submitted by a creditor and/or Party in Interest, an evidentiary hearing may be required to determine if said competing offer is indeed a "higher or better offer" than the offer tendered by the MPJM.

12.   Closing of this sale shall be conducted at the offices of Pryor & Mandelup, LLP, 675 Old Country Road, Westbury, NY 11590 on a date which is no later than thirty (30) days after the entry of an Order approving the sale and the highest bidder, time being of the essence as against the highest bidder.

13.   At closing, the Trustee shall prepare and deliver to MPJM (or the highest bidder ) a Trustee's Quitclaim Deed conveying title to the Brooklyn Property to MPJM (or the highest bidder).

14.   In the event that the MPJM is not the successful bidder or their offer is not approved, the $10,000.00 Initial Deposit shall be returned to the MPJM.

15.   In the event that MPJM is the successful bidder and fails to tender the balance of its offer within the time frame delineated in ¶ 12, supra, after ten (10) days notice to cure sent to Rosenberg, Musso & Wiener, L.L.P., counsel to MPJM at their address of 26 Court Street, Suite 2211, Brooklyn, New York 11242-1125, Attention: Bruce Weiner and to MPJM

Crush Holdings, LLC, at its address c/o Robinowitz Cohlan et. al., 199 Main Street, White Plains, NY 10601 both by certified mail, return receipt requested, MPJM will be held in default of this agreement. In such event, any and all payments made under this agreement shall be forfeited to the Bankruptcy Estate of Kenneth G. Moxey and retained by the Trustee as liquidated damages. Moreover, the Trustee's Quitclaim Deed shall be declared void and the Trustee shall be free, without notice to the MPJM, to market the Debtor's interest in the Brooklyn Property.

16.   Except as provided at ¶14 herein, MPJM hereby releases the Bankruptcy Estate of Kenneth G. Moxey and the Trustee from any and all claims and causes of action of whatever kind or nature and withdraw any and all claims it may have or can assert in the Bankruptcy case.

17.   The terms of this Stipulation are subject to the approval of the Bankruptcy Court. In the event that the Bankruptcy Court fails to approve the terms and conditions of this Stipulation, nothing contained herein shall be deemed to be an admission by any party hereto and is without prejudice to any and all rights and remedies of any party hereto.

18.   This Stipulation may not be altered, modified or changed in any manner unless in a writing signed by the parties thereto and subject to Order of the Bankruptcy Court.


[THIS PORTION OF PAGE DELIBERATELY LEFT BLANK]

19.    The Parties hereto may sign this Stipulation in two or more counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same instrument. An executed copy of this Stipulation via facsimile shall have the same force and effect as an original.

Dated: Westbury, New York
       October 31, 2012

                                    PRYOR & MANDELUP, L.L.P.
                                    Attorneys for the Trustee of the
                                    Bankruptcy Estate of Kenneth G. Moxey

                          By:     s/ Michael Farina
                                  Michael Farina
                                  675 Old Country Road
                                  Westbury, New York  11590
                                  (516) 997-0999

Dated: Brooklyn, New York
       October 19, 2012

                                    ROSENBERG, MUSSO & WEINER, L.L.P.
                                    Attorneys for MPJM Crush Holdings, LLC

                          By:     s/ Bruce Weiner
                                  Bruce Weiner
                                  26 Court Street
                                  Suite 2211
                                  Brooklyn, New York  11242-1125
                                  (718) 855-6840

SO ORDERED:



Dated: December 11, 2012                    _____
       Central Islip, New York                   Alan S. Trust
                                            United States Bankruptcy Judge